**Ex parte Anwar Iquill CHANDLER,
Applicant.**

No. WR–60942–01.

Court of Criminal Appeals of Texas.

April 13, 2005.

Randy Shaffer, Houston, for Appellant.

Baldwin Chin, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for the State.

### ORDER

COCHRAN, J., delivered the Order of the Court, joined by KELLER, P.J., MEYERS, PRICE, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ.

Applicant filed an application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure alleging ineffective assistance of his trial counsel and seeking relief from his conviction. Applicant was charged with the first-degree felony offense of aggravated kidnapping. A jury found him guilty as charged and sentenced him to life imprisonment. Applicant filed a direct appeal, alleging that the trial court erred by instructing the jury, during the punishment phase, to find the enhancement paragraph true based upon applicant's plea of true. The court of appeals affirmed.[1] Applicant filed a writ of habeas corpus alleging that his trial attorney provided constitutionally ineffective assistance because he failed to:

1) request a special issue during the punishment stage on whether appli-

---

1. *Chandler v. State,* 21 S.W.3d 922 (Tex.App.- Houston [14th Dist.] 2000, no pet.).

cant voluntarily released the kidnapping victim in a safe place; and

2) file a motion to quash the enhancement paragraph because applicant's prior conviction was not "final" when he committed the primary offense.

The trial court signed Findings of Fact and Conclusions of Law and recommended that this Court deny relief. We adopt the trial court's findings and deny relief.

### I.

■ According to the trial court's Findings of Fact,[2] the evidence at trial showed that applicant and a cohort kidnapped Theddeus Prophet and his girlfriend, Roxanne Rogers, at gunpoint on August 4, 1998. The kidnappers took their two victims to Ms. Rogers' uncle's apartment where applicant and his cohort tortured and sexually abused Mr. Prophet, Ms. Rogers, and "other occupants" of the apartment. Afterwards, the kidnappers left, locking the door and burglar bars of the apartment from the outside. Mr. Prophet and Ms. Rogers managed to escape through a back window, climb down a tree, and find a police officer.

At the punishment phase, applicant pleaded "true" to the enhancement paragraph, which alleged that he had been convicted of possession with intent to deliver cocaine on December 18, 1996. At trial, the State introduced a pen packet which showed that applicant was sentenced for this offense on December 18, 1996, and gave notice of appeal on January 6, 1997. The pen packet also reflected that applicant's conviction was affirmed by the court of appeals on February 26, 1998, and that the mandate was issued on August 10, 1998, six days after applicant kidnapped Mr. Prophet.

### II.

■ To obtain habeas corpus relief for ineffective assistance of counsel under *Strickland v. Washington*,[3] an applicant must show that his counsel's performance was deficient and that there is a "reasonable probability"—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance.[4] As the Supreme Court explained, the purpose of the constitutional requirement of effective counsel is to ensure a fair trial.[5] Thus, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[6] It is only in that

---

2. Applicant did not include a copy of the trial testimony in the writ record so we have no way of independently verifying the accuracy of the facts set out in the trial court's findings. It is the applicant's obligation to provide a sufficient record that supports his factual allegations with proof by a preponderance of the evidence. *See Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex.Crim.App.1995) ("The burden of proof in a writ of habeas corpus is on the applicant to prove by a preponderance of the evidence his factual allegations").

3. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

4. *Id.* at 694, 104 S.Ct. 2052; *Ex parte White*, 160 S.W.3d 46, 49 (Tex.Crim.App.2004).

5. *Id.* at 686, 104 S.Ct. 2052.

6. *Id.* To the uninitiated, the sheer number of allegations of ineffective assistance of counsel made against this nation's criminal-defense lawyers might well lead one to the conclusion that our law schools are entirely incapable of producing competent defense lawyers. A March 18, 2005, Westlaw search of federal and state decisions addressing ineffective assistance of counsel claims during the past fifteen months alone totals 9,467 cases (http://web2.westlaw. com/search/all cases & query "ineffective assistance of counsel" & date after 12/31/2003). According to Westlaw, 734 criminal cases in Texas appellate courts discussed claims of ineffective assis-

relatively rare situation that a criminal defendant may obtain a new trial based upon a claim that his attorney provided constitutionally deficient assistance.

■■■ First, a defendant must show, by a preponderance of the evidence, that counsel's performance was constitutionally deficient—that is, counsel was not acting as "a reasonably competent attorney," and his advice was not "within the range of competence demanded of attorneys in criminal cases."[7] Second, the applicant must show that this constitutionally deficient performance prejudiced his defense—that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[8] Under this two-pronged analytical framework, an applicant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."[9] Moreover, our "review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance."[10]

As the Court in *Strickland* aptly noted, the practice of law is an art, not a science, "and an act or omission that is unprofessional in one case may be sound or even brilliant in another."[11] The existence of an adversary system itself demonstrates that

there always are lawyers who will disagree on almost any issue. Since law is not an exact science, no level of skill or excellence exists at which all differences of opinion or doubts will be removed from the minds of lawyers and judges.[12]

Thus, when a legal proposition or a strategic course of conduct is one on which reasonable lawyers could disagree, "an error that occurs despite the lawyer's informed judgment should not be gauged by hindsight or second-guessed."[13]

## A. Counsel was not ineffective for failing to request a jury instruction on "voluntary release in a safe place."

■■■ In this case, applicant alleges that his trial counsel provided constitutionally deficient legal representation because he did not request a jury instruction during the punishment stage on whether he had voluntarily released Mr. Prophet in a safe

---

tance of counsel during that same period. That number, however, does not include the hundreds, perhaps thousands, of ineffective-assistance claims filed in post-conviction habeas applications with this Court every year for which we do not write a published opinion.

But, these ineffective-assistance claims are easy to make, and it may be a natural reaction for a criminal defendant to blame his lawyer when he is found guilty of a crime. As the Supreme Court pointedly noted in *Strickland*, "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." 466 U.S. at 689, 104 S.Ct. 2052.

7. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 (internal quotations omitted); *Ex parte White*, 160 S.W.3d at 50–51.

8. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

9. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim.App.1999).

10. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim.App.2002).

11. *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052.

12. 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 18.17, at 57 (5th ed.2000).

13. *Id.* at 59.

place. Applicant's trial counsel provided an affidavit stating:

> Based upon this evidence [of how applicant committed the kidnapping] and my perception of how the jury received this evidence, I did not believe that the evidence actually supported a special issue of a voluntary release in a safe location. Furthermore, I did not believe that it was reasonable or plausible for the jury to believe that [applicant] left the complainant and his girlfriend in a safe location. As a result, I did not request a special instruction on voluntary release.

The trial court concluded that applicant's counsel made an informed strategic decision not to ask for an instruction on "voluntary release in a safe place" during the punishment phase.

Under section 20.04(d) of the Texas Penal Code, a defendant may, during the punishment phase, raise the issue of whether he voluntarily released his kidnap victim in a safe place.[14] If the defendant proves that issue by a preponderance of the evidence, the punishment for the aggravated kidnapping is reduced from a first-degree felony to a felony of the second degree.[15]

It is certainly a debatable legal proposition—at least from the Findings of Fact before us—that the evidence in this trial could support a rational finding, by a preponderance of the evidence, that applicant "voluntarily released" Mr. Prophet in a "safe" place. Applicant asserts that because he left his tortured and sexually abused victims in an apartment, that fact alone is sufficient to support the submission of a jury instruction on "voluntary release in a safe place." He may have left his victims in an apartment, but he also locked the burglar bars from the outside, presumably to prevent their escape. Is a defendant legally entitled to an instruction on "voluntary release in a safe place" because his kidnap victims were small enough and agile enough to escape out of a second-story window and climb down a tree to seek assistance?[16] This is, at a minimum, an issue upon which reasonably competent attorneys and judges could disagree.

■■■ A reasonably competent lawyer might well conclude that leaving kidnap victims in a locked apartment, room, or tomb is not a "release" at all. Instead, under section 20.01(1), one might conclude that those victims continue to be "restrained" because their movements are still restricted without their consent and their liberty is substantially interfered with by being confined.[17] Texas courts have long held that a kidnap victim's escape from captivity does not entitle a defendant to an instruction on the issue of "voluntary release in a safe place."[18]

14. Tex. Pen.Code § 20.04(d).

15. Id.; see generally Brown v. State, 98 S.W.3d 180, 185–86 (Tex.Crim.App.2003).

16. Applicant states that the trial evidence also showed that a third kidnap victim escaped by "squeezing through the burglar bars," while a fourth victim testified that "someone in the apartment undid the burglar bars with a screwdriver, but the police arrived before the remaining occupants could leave."

17. Tex. Pen.Code § 20.01(1).

18. See Brown, 98 S.W.3d at 188 (stating that "voluntary release" does not include rescue by the police or escape by the kidnap victim); Carreon v. State, 63 S.W.3d 37, 40 (Tex.App.-Texarkana 2001, pet. ref'd) (defendant not entitled to mitigation instruction when evidence showed that kidnap victims escaped from a car in which they had been confined); Hernandez v. State, 10 S.W.3d 812, 822 (Tex. App.-Beaumont 2000, no pet.) (when facts show kidnap victim "escaped" from confinement, defendant not entitled to instruction of "voluntary release in safe place" instruction). As one court of appeals explained:

Applicant relies upon a single court of appeals case, *Lavarry v. State,*[19] for his assertion that leaving a kidnap victim in an apartment *ipso facto* constitutes "voluntary release in a safe place," and entitles him to submission of a mitigating jury instruction. In *Lavarry,* however, the kidnap victim was not abandoned inside a locked apartment behind burglar bars. He was free to open the apartment door and free to depart unhindered.[20]

A reasonably competent attorney might well conclude that there is an enormous factual and legal difference between a kidnap victim being voluntarily released inside an open apartment and one being left, after having been tortured and sexually abused, in an apartment behind locked burglar bars. The trial court in this case found that applicant's trial attorney made a "reasonable or plausible" strategic decision not to request a jury instruction on "voluntary release in a safe place" based upon the evidence presented at trial. We cannot fault the trial court's fact finding

that this was a reasonable or "plausible," strategic decision.

██ This was a reasonable decision because applicant has not shown that the trial court would have (or should have) actually submitted such an instruction had it been requested, or that the evidence was sufficient to prove, by a preponderance of the evidence, that applicant did, in fact, voluntarily release Mr. Prophet in a safe place. Applicant contends that "[t]here was no sound strategic reason not to request the special issue, which could only have benefitted applicant." But a reasonably competent counsel need not perform a useless or futile act,[21] such as requesting a jury instruction to which the defendant is not legally entitled or for which the defendant has not offered legally sufficient evidence to establish. Requesting a jury instruction to which one is not legally entitled, merely for the sake of making the request, is not the benchmark for a competent attorney.

"voluntary release in a safe place," should not be weighed from a standpoint of physical condition of a victim and that victim's ability to ultimately vacate or escape the immediate prevalence of the accused. It seems appropriate that any judgment or finding regarding "voluntary release in a safe place," must be viewed, weighed and determined solely from the *conduct of the accused* and not as to possibilities within speculated grasps of the victim. Being without square-on case law guidance, we conclude that an accused, in order to avail himself of the mitigating effect of § 20.04(b), must have performed some overt and affirmative act that brings home to the victim that he/she has been fully released from captivity. That release must occur in a place and manner which realistically *conveys to the victim that he/she is* now freed from captivity and is now in circumstances and surroundings wherein aid is readily available.
*Wiley v. State,* 820 S.W.2d 401, 411 (Tex.App.-Beaumont 1991, no pet.). Locking numerous kidnap victims behind burglar bars in a sec-

ond-story apartment is not normally the type of conduct that conveys to the victims that they are now "freed from captivity" and that "aid is readily available."

19. 936 S.W.2d 690 (Tex.App.-Dallas 1996, pet. dism'd).

20. *Id.* at 695–99. *Lavarry* is further distinguishable because it was decided under the former provision which required the State to disprove the fact that a defendant voluntarily released a kidnap victim in a safe place once the defendant offered some evidence on that mitigation issue. *Id.* at 696 n. 1 (noting change in law).

21. *See, e.g., Roberson v. State,* 852 S.W.2d 508, 511 (Tex.Crim.App.1993) (counsel not ineffective for failing to secure rulings on pretrial motions without showing that rulings would have changed outcome of case); *Mooney v. State,* 817 S.W.2d 693, 698 (Tex.Crim. App.1991) (counsel not required to engage in the filing of futile motions).

**B. Applicant has failed to prove, by a preponderance of the evidence, that his trial counsel was constitutionally deficient in not filing a motion to quash the enhancement paragraph.**

 In his second ineffective-assistance claim, applicant alleges that his counsel was constitutionally deficient by failing to file a motion to quash the enhancement paragraph because his prior felony conviction, entered on December 18, 1996, was not final at the time he committed the present offense. Although that conviction for possession of a controlled substance with intent to deliver had been affirmed by the court of appeals on February 26, 1998, the mandate of affirmance did not issue until August 10, 1998, six days after applicant committed this aggravated kidnapping. With regard to this allegation, applicant's trial counsel stated:

> Prior to trial, I investigated [applicant's] prior felony conviction, I specifically reviewed the mandate of affirmance related to [applicant's] direct appeal of his prior conviction in cause number 717606. Based upon that review, I believed that [applicant's] conviction was final prior to him allegedly committing the aggravated kidnapping in cause number 790823. However, after presently reviewing the mandate of affirmance in cause number 717606, I was clearly incorrect in my earlier assessment of the finality of cause number 717606 in relation to the time of the offense in cause number 790823.

According to applicant's trial attorney, he did investigate the prior conviction, and, based upon that investigation, he determined that it was final prior to the commission of the present offense. He now admits that he was mistaken about the legal "finality" of that conviction.

This mistake of law, however, is based upon the reasoning and result in *Beal v. State*,[22] an intervening decision by this Court delivered on December 18, 2002— three years *after* applicant's trial. In *Beal*, this Court "settle[d] the question of which date should be used in determining the finality of a prior conviction alleged in an indictment for enhancement purposes."[23] Texas law had previously been in conflict on this significant issue both among various courts of appeals and between different opinions from this Court.[24] Thus, in *Beal*, we resolved those uncertainties and conflicts and held that a prior conviction "becomes final when the appellate court issues its mandate affirming the conviction."[25] We reversed the conflicting lower-court decision in *Beal* by the First Court of Appeals.

The First Court of Appeals, relying upon an earlier case by this Court, had held in *Beal*, that once the mandate of affirmance is issued, "the date to be used in determining the finality of the trial court's judgment is the date the trial court's judgment was signed, not the date of the appellate court's mandate."[26] That is, the court of appeals reached exactly the same conclusion that applicant's trial attorney had: a prior conviction is "final" on the date the trial court's judgment is signed once the appellate court's mandate is issued. And for this proposition, the First Court of Appeals relied upon its own earlier case, *Caballero v. State*,[27] and that

---

22. 91 S.W.3d 794 (Tex.Crim.App.2002).

23. *Id.* at 794–95.

24. *See id.* at 795.

25. *Id.*

26. *Beal v. State,* 35 S.W.3d 677, 686–87 (Tex. App.-Houston [1st Dist.] 2000).

27. 725 S.W.2d 776, 778 (Tex.App.-Houston [1 Dist.] 1987, no pet.).

decision, in turn, relied upon numerous other earlier appellate decisions.[28] In sum, the controlling precedent in the jurisdiction in which applicant was tried was exactly in accord with counsel's belief.

■ In 1999—the time at which applicant's counsel made a determination concerning the finality of applicant's prior conviction—his belief that the conviction was final was in accord with the belief of the many experienced justices on at least three different courts of appeals in Texas. A defendant will have difficulty in establishing that his counsel provided constitutionally deficient legal advice when that advice is precisely in accord with many of the justices of our state's intermediate appellate courts. Surely, a reasonably prudent attorney in Texas is not constitutionally deficient if he relies upon pertinent judicial opinions in assessing the validity of a legal proposition.

Nevertheless, applicant faults his counsel for failing to discover and follow *Jones v. State*,[29] a prior decision from this Court. The record does not show whether applicant's counsel reviewed the *Jones* case as part of his legal investigation. But *Jones* does not, on its face, stand for the proposition that a prior conviction is not final until the appellate court issues its mandate. As our Presiding Judge has noted, *"Jones* held merely that if the State's proof of the prior conviction shows on its face that the conviction was appealed, the State must put on evidence that [the] mandate has issued."[30] Although reasonable attorneys and jurists might disagree about the ultimate holding and import of *Jones*, applicant's trial attorney is surely not constitutionally deficient if he, like some Texas jurists, believed that *Jones* did not stand for the proposition that the date that a prior conviction becomes "final" for enhancement purposes is the date the mandate issues.

■ The various and sometimes conflicting judicial opinions set out above demonstrate the old adage that "what an attorney thinks the law is today may not be what a court decides tomorrow."[31] Because the law is not an exact science and it may shift over time, "the rule that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized"[32] and may be traced back to Lord Mansfield's 1767 decision in *Pitt v. Yalden*.[33] Ignorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel, but the specific legal proposition must be "well considered and clearly defined."[34]

One problem with claims of ineffective assistance of counsel is that the original

**28.** The prior decisions cited in *Caballero* were: *Head v. State*, 419 S.W.2d 375, 377 (Tex.Crim.App.1967); *Wilson v. State*, 689 S.W.2d 311, 312 (Tex.App.-Fort Worth 1985, pet. ref'd); *Helton v. State*, 635 S.W.2d 824, 825 (Tex.App.-Beaumont 1982), *aff'd*, 670 S.W.2d 644 (Tex.Crim.App.1984); *Bingham v. State*, 630 S.W.2d 718, 721 (Tex.App.-Houston [1st Dist.] 1982, no pet.).

**29.** 711 S.W.2d 634 (Tex.Crim.App.1986).

**30.** *Beal*, 91 S.W.3d at 797 (Keller, P.J., concurring).

**31.** MALLEN & SMITH, § 18.1 at 2.

**32.** *Id.*

**33.** 4 Burr.2060, 98 Eng. Rep. 74 (K.B.1767) (lawyer who mistakenly interpreted relevant statute concerning debt discharge and who therefore obtained defaulting party's arrest and imprisonment was not liable for his error in judgment when the language of the statute was unclear and lawyer was a "country attorney" who was probably unaware of two judicial opinions on point).

**34.** MALLEN & SMITH, § 18.4 at 8.

lawyer's decisions are invariably challenged in hindsight. But the standard used to judge his past conduct is all too frequently a subsequent judicial decision that has clarified or altered the law under which the attorney had to make his original determination.[35] Those who fail to accurately predict the future course of the law are accused of having been incompetent for following the law that existed—or at least was unsettled—at the time the decision had to be made. But a bar card does not come with a crystal ball attached.

 Therefore, legal advice which only later proves to be incorrect does not normally fall below the objective standard of reasonableness under *Strickland*.[36]

Texas courts have long upheld this basic concept of attorney competence. As we stated in *Ex parte Welch*,[37] "counsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law."[38] It cannot be disputed that the law concerning when a prior conviction becomes final for purposes of its use as an enhancement was unsettled at the time of applicant's trial in 1999, because, in its 2000 *Beal* opinion, the First Court of Appeals reached the same legal conclusion applicant's counsel had reached a year earlier.

Furthermore, applicant is incorrect that, even if the law had been well-settled at the

---

**35.** *Id.*, § 18.17, at 56.

**36.** *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir.1999) (defense counsel was not ineffective in advising criminal client that his out-of-state prior conviction could not be used to enhance his sentence under Florida habitual violent-offender statute when that statute lacked clarity at time advice was given); *United States v. McNamara*, 74 F.3d 514, 516–17 (4th Cir.1996) (counsel was not constitutionally deficient for following controlling law of circuit that willfulness was not an element of structuring financial transactions to avoid currency reporting requirements even though Supreme Court had granted certiorari on that issue at time legal advice was given; "an attorney's failure to anticipate a new rule of law was not constitutionally deficient"); *Pitts v. Cook*, 923 F.2d 1568, 1573–74 (11th Cir. 1991) (counsel's failure to raise *Batson*-type claim before *Batson* was decided by Supreme Court was not constitutionally ineffective assistance of counsel); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir.1983) (defendant's trial counsel was not ineffective for failing to object to instructions regarding presumption of malice and unlawfulness when Supreme Court decisions supporting challenges to such presumptions had not been delivered at time of trial); *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir.1972) (noting that "counsel's inability to foresee future pronouncements [by the courts] ... does not render counsel's representation ineffective.... Clairvoyance is not

a required attribute of effective representation"; holding counsel ineffective when controlling Supreme Court precedents, decided more than a decade before counsel rendered his advice, demonstrated that his advice was erroneous). Of course, the more longstanding and well-settled the legal proposition, the more likely counsel will be deemed deficient if he is ignorant of it.

**37.** 981 S.W.2d 183 (Tex.Crim.App.1998).

**38.** *Id.* at 184; *see also Vaughn v. State*, 931 S.W.2d 564, 567 (Tex.Crim.App.1996) ("We have said that basing an ineffective assistance claim on caselaw that is unsettled at the time of counsel's actions 'would be to engage in the kind of hindsight examination of effectiveness of counsel the Supreme Court expressly disavowed in *Strickland*' "); *Calderon v. State*, 950 S.W.2d 121, 133 (Tex.App.-El Paso1997, no pet.) ("Failure to follow a procedural point whose requirements are unsettled at the time of trial is not indicative of ineffective assistance standing alone"); *Saucedo v. State*, 756 S.W.2d 388, 393–94 (Tex. App.-San Antonio 1988, no pet.) ("In judging the effectiveness of counsel's assistance, a reviewing court looks to the totality of the representation as of the time of trial, not through hindsight"; counsel cannot be faulted for not anticipating law which was not clarified until highest court handed down definitive opinion).

time of applicant's trial, his counsel was ineffective for failing to file a motion to quash the enhancement paragraph. On its face, there is nothing legally wrong with the enhancement paragraph allegation. It is simply that the State could not, under this Court's 2002 opinion in *Beal*, offer legally sufficient proof at trial that the conviction was final before the commission of the primary offense.

 Finally, even assuming that applicant's trial counsel had an obligation to accurately foretell a clarification in the law made three years after his trial, applicant has failed to prove, by a preponderance of the evidence, that he suffered any prejudice. The range of punishment for aggravated kidnapping without an enhancement paragraph is five years to life in prison. The range of punishment for aggravated kidnapping with one prior enhancement is fifteen years to life in prison. Because applicant was sentenced to the maximum punishment—a life sentence—applicant cannot show that his plea of "true" to the enhancement paragraph was reasonably likely to cause the jury to increase his punishment. After all, evidence of the prior conviction would have been admissible in any event, even though, under today's law, it would not have made the minimum punishment fifteen years. And there is no indication from the writ record that it was a reasonable probability that this jury assessed the maximum punishment based on the prior victimless drug conviction rather than on the seemingly heinous facts of the current kidnapping case. Here the jury did not focus on the minimum punishment available; it focused upon the maximum punishment which was life imprisonment with or without any enhancement paragraph.

For all of these reasons, we adopt the trial court's Findings of Fact and Conclu-sions of Law, and deny relief on applicant's writ of habeas corpus.

WOMACK, J., concurred in the denial of relief.