IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,104






EX PARTE RANDALL LEE ROEMER, Applicant









ON APPLICATION FOR A WRIT OF HABEAS CORPUS

IN CAUSE NO. 03-396-K368

FROM THE 368th DISTRICT COURT OF WILLIAMSON COUNTY





 Keasler, J., filed this concurring opinion in which Hervey, J., joined.



 Randall Lee Roemer pled guilty to driving while intoxicated in exchange for a four-year
sentence recommendation. Roemer now claims that his counsel was ineffective for stipulating
to an alleged improper enhancement conviction and that his sentence was illegal. I join the
Court's opinion but write separately to explain why our precedent supports the finding that
counsel was effective and why the result under the plain language of the statute is troublesome.

Facts and Procedural History

 Roemer was charged with driving while intoxicated ("DWI") on May 8, 2003. (1) The
indictment alleged that he used or exhibited a deadly weapon during the commission of the
primary offense. It also contained a jurisdictional enhancement paragraph alleging that
Roemer had a 1990 conviction for "intoxication" manslaughter. Under Section 49.09(b)(1)
of the Texas Penal Code, an intoxication manslaughter conviction elevated Roemer's primary
offense from a Class A misdemeanor to a third-degree felony with a punishment range of two
to ten years' imprisonment and a fine not to exceed $10,000. (2) Section 49.09(b) states in
pertinent part:

(b) An offense under Section 49.04, 49.05, 49.06, or 49.065 is a felony of
the third degree if it is shown on the trial of the offense that the person
has previously been convicted:

 (1) one time of an offense under Section 49.08 [intoxication
manslaughter] or an offense under the laws of another state if the
offense contains elements that are substantially similar to the
elements of an offense under Section 49.08; or 

 (2) two times of any other offense relating to the operating of a
motor vehicle while intoxicated, operating an aircraft while
intoxicated, operating a watercraft while intoxicated, or operating
or assembling an amusement ride while intoxicated. (3)


The State later amended the indictment to reflect that Roemer had been convicted of
"involuntary" manslaughter under former Section 19.05(a)(2) of the Penal Code, not
"intoxication" manslaughter under Section 49.08. (4)

 At the time of Roemer's 1990 involuntary manslaughter conviction, there was no
offense called "intoxication" manslaughter. Rather, Section 19.05(a) provided that involuntary
manslaughter could be committed in one of two ways: (1) by "recklessly caus[ing] the death
of an individual"; or (2) "by accident or mistake when operating a motor vehicle, airplane,
helicopter, or boat while intoxicated and, by reason of such intoxication, caus[ing] the death
of an individual." (5) Following legislation that took effect in 1994, the second way (under which
Roemer had been convicted in 1990) is now known as "intoxication" manslaughter under
Section 49.08 of the Penal Code. (6) "Before September 1, 1994, manslaughter and intoxication
manslaughter were merely alternate methods of committing the offense of involuntary
manslaughter under former § 19.05." (7) 

 Because Section 49.09(b)(1) did not specifically authorize enhancement by using an
involuntary manslaughter conviction under 19.05(a)(2), Roemer's counsel researched whether
the enhancement was proper. At that time, we had not rendered an opinion on the matter. But
Roemer's counsel "review[ed] related case and statutory law . . . and concluded that the use of
the involuntary manslaughter conviction to increase the status of Mr. Roemer's DWI offense
to a felony was legitimate." Counsel "based [his] conclusion largely on [his] reading of an
unpublished opinion from the 1st Court of Appeals, Louviere v. State[,]" which held that the
trial court's use of an involuntary manslaughter conviction to enhance an offense was not
error. (8)

 Roemer's counsel "explained the results of [his] research and [his] conclusions to Mr.
Roemer . . . [who then] asked [counsel] to negotiate a plea agreement with the District
Attorney's Office to dispose of his case." Counsel "negotiated a punishment recommendation
from the State of 5 years in prison in exchange for a guilty plea by Mr. Roemer to the felony
offense of driving while intoxicated. The State also agreed to waive the deadly weapon
allegation . . . ." On the day of trial, Roemer's counsel negotiated an even more lenient four-year sentence. After consulting with his counsel, Roemer pled guilty to felony DWI. The trial
judge accepted Roemer's plea, found him guilty, and sentenced him to four years'
imprisonment pursuant to the plea agreement.

 Roemer filed this application for a writ of habeas corpus claiming that his counsel was
ineffective for stipulating to the validity of his prior conviction for enhancement and that he
received an illegal sentence. The trial judge filed findings of fact and conclusions of law,
which included the following:


 At his guilty plea hearing, Roemer told the trial judge that he was
satisfied with his attorney and that his attorney had represented him
adequately and advised him fully as to the law and facts of his case.

 Roemer's attorney extensively researched whether the State could
increase Roemer's DWI charge to a felony based on his prior involuntary
manslaughter conviction.

 Roemer's attorney explained to him that the State's use of the prior
conviction was legitimate but that Roemer could challenge that use by
pleading not guilty and by appealing any resulting conviction.

 When he pled guilty to felony DWI, Roemer was aware of the legal issue
concerning the use of his involuntary manslaughter conviction to elevate
his DWI offense to a felony and was aware that he could challenge the
use of his prior conviction at trial and on appeal.

 Roemer knowingly and voluntarily chose to waive that issue, and all other
legal and factual issues associated with his case, by pleading guilty to
felony DWI and accepting a negotiated punishment.

 Roemer's attorney was not deficient in his representation of Roemer.



I. Ineffective Assistance of Counsel

 "To obtain habeas corpus relief for ineffective assistance of counsel under Strickland
v. Washington, (9) an applicant must show that his counsel's performance was deficient and that
there is a 'reasonable probability'--one sufficient to undermine confidence in the result--that
the outcome would have been different but for his counsel's deficient performance." (10) Roemer
argues that "his counsel's performance was deficient in his first stipulating to the wrong prior
intoxication conviction, and in not challenging the imposition of a felony sentence after it was
clear that the State did not have, and could not have sufficient proof to convict [Roemer] of a
felony." In response, the State contends that his "representation . . . was not deficient under
an objective standard of reasonableness" because Roemer's counsel identified and researched
the legal issue in the State's indictment, found case law supporting the use of Roemer's 1990
conviction for enhancement, explained those findings and his opinion to Roemer, and then left
the decision of whether to dispute the use of that conviction or enter a plea agreement to his
client. In fact, the State argues, Roemer's attorney "could have done nothing more than he did
other than force [Roemer] to litigate the legal issue presented by the State's indictment."

 An appellate court gives "almost total deference to a trial judge's determination of the
historical facts supported by the record, especially when those fact findings are based on an
evaluation of credibility and demeanor." (11) The trial judge in this case found that "[a]t the time
he pleaded guilty to the felony offense of driving while intoxicated, [Roemer] was aware of the
legal issue concerning the use of his prior conviction for involuntary manslaughter to elevate
his DWI offense to a felony." The judge also found that Roemer was aware he could challenge
the use of his prior conviction using trial and appeal procedures. Because the record supports
them, these findings receive great deference. (12)

 In Ex parte Chandler, we explained that "a reasonably prudent attorney in Texas is not
constitutionally deficient if he relies upon pertinent judicial opinions in assessing the validity
of a legal proposition." (13) Moreover, because "'what an attorney thinks the law is today may not
be what a court decides tomorrow[,]' . . . 'the rule that an attorney is not liable for an error in
judgment on an unsettled proposition of law is universally recognized.'" (14) "[C]ounsel's
performance will be measured against the state of the law in effect during the time of trial and
we will not find counsel ineffective where the claimed error is based upon unsettled law." (15) 
We also stated that "legal advice which only later proves to be incorrect does not normally fall
below the objective standard of reasonableness under Strickland." (16)

 Roemer's counsel's legal advice was correct at the time he offered it. Counsel relied
on the only available opinion dealing with the issue. "[T]he state of the law in effect during the
time of trial" (17) consisted of a single opinion, which clearly resolved the issue against his client. 
Counsel thoroughly explained the legal issue and the effect of the court of appeals's opinion
to his client. But the final decision to accept the plea agreement was Roemer's alone. It could
not, therefore, be counsel's judgment error. Roemer's counsel's actions fall squarely within
our explanation of effective assistance of counsel in Ex parte Chandler.

 Moreover, "the only required duty of counsel under the most liberal construction when
a plea of guilty is entered is that counsel should ascertain if the plea is entered voluntarily and
knowingly." (18) Roemer's counsel fulfilled that duty in this case. Because Roemer cannot
satisfy Strickland's first prong, an evaluation of the second prong is unnecessary.

II. Illegal Sentence

 Today the majority decides that Roemer's sentence is illegal "because [Roemer] has
only one prior conviction for an offense relating to the operating of a motor vehicle while
intoxicated [(involuntary manslaughter under former Penal Code Section 19.05(a)(2))] and
does not have even a single conviction for intoxication manslaughter." (19) Because Roemer's
prior conviction for involuntary manslaughter is substantially similar to the current offense of
intoxication manslaughter, but the statute treats the two offenses differently, I write separately
to point out this inconsistency.

 Section 49.09 of the Texas Penal Code governs enhancement of intoxication-related
offenses and provides in pertinent part:

 (b) An offense under Section 49.04 [(Driving While Intoxicated)], 49.05
[(Flying While Intoxicated)], 49.06 [(Boating While Intoxicated)], or
49.065 [(Assembling or Operating an Amusement Park Ride While
Intoxicated)] is a felony of the third degree if it is shown on the trial of
the offense that the person has previously been convicted:

 (1) one time of an offense under Section 49.08 [(Intoxication
Manslaughter)] or an offense under the laws of another state if
the offense contains elements that are substantially similar to the
elements of an offense under Section 49.08; or

 (2) two times of any other offense relating to the operating of a
motor vehicle while intoxicated, operating an aircraft while
intoxicated, operating a watercraft while intoxicated, or operating
or assembling an amusement ride while intoxicated.

 (c) For the purposes of this section:

 (1) "Offense relating to the operating of a motor vehicle while
intoxicated" means:

 (A) an offense under Section 49.04 [(Driving While
Intoxicated)] or 49.045 [(Driving While Intoxicated With
Child Passenger)];

 (B) an offense under Section 49.07 [(Intoxication Assault)] or
49.08 [(Intoxication Manslaughter)], if the vehicle
operated was a motor vehicle;

 (C) an offense under Article 6701l-1, Revised Statutes
[(Driving While Intoxicated)], as that law existed before
September 1, 1994;

 (D) an offense under Article 6701l-2, Revised Statutes
[(Driving While Intoxicated)], as that law existed before
January 1, 1984;

 (E) an offense under Section 19.05(a)(2) [(Involuntary
Manslaughter)], as that law existed before September 1,
1994, if the vehicle operated was a motor vehicle; or

 (F) an offense under the laws of another state that prohibit the
operation of a motor vehicle while intoxicated. (20)


 "Where the statute is clear and unambiguous, the Legislature must be understood to
mean what it has expressed, and it is not for the courts to add or subtract from such a statute." (21) 
If a statute's meaning "should have been plain to the legislators who voted on it, we ordinarily
give effect to that plain meaning." (22) Because Section 49.09 explicitly refers to former Section
19.05(a)(2), its plain language prevents us from considering extratextual factors. But when
Section 49.09 is evaluated in its entirety, the results are incongruous. The following
hypothetical cases illustrate the inconsistency.


 Defendant #1: Convicted in Texas of Involuntary Manslaughter under former Texas
Penal Code Section 19.05(a)(2) on August 31, 1994, and currently on trial for the
offense of Driving While Intoxicated under Texas Penal Code Section 49.04 committed
on February 1, 2003. Under the majority's opinion, the current DWI offense may not
be enhanced to a third-degree felony under Texas Penal Code Section 49.09(b)(1). It
may only serve as one of two necessary predicate convictions under Section
49.09(b)(2) and 49.09(c)(1)(E) to enhance the current DWI offense to a third-degree
felony.

 Defendant #2: Convicted in Texas of Intoxication Manslaughter under Texas Penal
Code Section 49.08 on September 1, 1994, and currently on trial for the offense of
Driving While Intoxicated under Texas Penal Code Section 49.04 committed on
February 1, 2003. The current DWI offense may be enhanced to a third-degree felony
under Texas Penal Code Section 49.09(b)(1).

 Defendant #3: Convicted in another state of an offense with similar elements to
Intoxication Manslaughter under Texas Penal Code Section 49.08 on August 31, 1994,
and currently on trial for the offense of Driving While Intoxicated under Texas Penal
Code Section 49.04 committed on February 1, 2003. The current DWI offense may
be enhanced to a third-degree felony under Texas Penal Code Section 49.09(b)(1).

 Defendant #4: Convicted in another state of an offense with similar elements to 
Intoxication Manslaughter under Texas Penal Code Section 49.08 on September 1,
1994, and currently on trial for the offense of Driving While Intoxicated under Texas
Penal Code Section 49.04 committed on February 1, 2003. The current DWI offense
may be enhanced to a third-degree felony under Texas Penal Code Section 49.09(b)(1).



 Consequently, under a plain reading of the statute and the majority's decision, only a
defendant convicted of involuntary manslaughter under former Section 19.05(a)(2) escapes
felony-level punishment without an additional conviction as required by Section 49.09(b)(2). 
As the hypothetical cases show, Section 49.09 poses a similar inconsistency to the statute we
examined in Ex parte Ervin. (23) There, we considered "whether Government Code Section
508.149(a) [could] be read to include former Penal Code Section 21.09." (24) We noted that the
language of Section 508.149(a) did "not include former statutes such as sexual abuse of a
child, rape of a child, rape, or aggravated rape" and that there was "no explicit catch-all
provision that would include all prior versions of the offenses listed in Section 508.149." (25) 
Nevertheless, we explained that

 If we were to apply the literal meaning of the words in Section 508.149, conduct
committed on the day before the effective date of the repealed sexual offense
statutes would make an inmate eligible for mandatory supervision release. But,
the same conduct committed just a day later would render the inmate ineligible
for mandatory supervision release. It sometimes happens that defendants are
sentenced to more or less severe punishment for the same conduct based on the
date on which the offense is committed. But in this context, we cannot believe
that the legislature intended to produce these results. (26)


 Similar to the result in Ex parte Ervin, Defendant #1's previous conviction for
involuntary manslaughter under Section 19.05(a)(2) on August 31, 1994, would not enhance
his current DWI offense to a third-degree felony without another conviction for an "offense
relating to the operating of a motor vehicle while intoxicated." (27) But if Defendant #1 had been
convicted one day later (September 1, 1994) of intoxication manslaughter under Section 49.08
(the statutory successor to former Section 19.05(a)(2)), his current DWI offense would be
enhanced by that single conviction, just as Defendant #2. Moreover, Defendant #1's current
DWI offense would be enhanced by a single previous conviction on August 31, 1994, in
another state of an offense with substantially similar elements, just as Defendant #3. And if
Defendant #1 had been convicted the next day (September 1, 1994) of an offense with
substantially similar elements in another state, the current DWI offense would also be
enhanced by that one previous conviction, just as Defendant #4.

 The inconsistencies illustrated by these hypothetical cases demonstrate that Section
49.09 gives preferential treatment to defendants with involuntary manslaughter convictions
under former Section 19.05(a)(2) by requiring an additional prior conviction under Section
49.09(b)(2). The current DWI offenses for Defendants #2 through #4, however, are all subject
to enhancement using only one conviction for substantially the same previous conviction as
Defendant #1. Because Section 49.09's language is not ambiguous and explicitly addresses
Section 19.05(a)(2), I cannot say that the Legislature did not intend the result or that there are
two reasonable, yet different, interpretations of Section 49.09. (28) But bias in favor of offenders
such as Defendant #1 is a consequence of a plain reading of the statute.

 Additionally, Section 49.09(c)(1)(B) explicitly includes intoxication manslaughter as
an "offense relating to the operating of a motor vehicle while intoxicated." (29) That conviction
may therefore serve as one of the two required predicate convictions to enhance a defendant's
current DWI offense to a third-degree felony under Section 49.09(b)(2). (30) But under Section
49.09(b)(1), only one prior conviction for intoxication manslaughter is necessary to enhance
the current DWI offense to a third-degree felony. Section 49.09(c)(1)(B) appears to be
superfluous because only one prior conviction for intoxication manslaughter is required for
enhancement to a third-degree felony under Section 49.09(b)(1), yet the same offense may
serve as one of the two prior convictions required by Section 49.09(b)(2). If one prior
conviction for intoxication manslaughter is sufficient to enhance a DWI offense to a third-degree felony under Section 49.09(b)(1), then it seems unnecessary to have it serve as one of
two offenses under Section 49.09(b)(2).

 Although the statute is incongruous and appears to distinguish convictions solely by
date of offense, established principles of statutory construction and separation of powers
prevent this Court from "legislating from the bench" to correct a perceived inconsistency in
a statute.

 The dissent maintains that our decision in Griffith v. State (31) is controlling and criticizes
the majority for failing to acknowledge and follow this unanimous precedent. The dissent
should not be so quick to conclude that "[a] strict literal reading of section 49.09 . . . would
lead to exactly the absurd results that this Court unanimously rejected in Griffith" (32) without
acknowledging the entire text of the statute. The dissent's interpretation actually expands,
rather than follows, Griffith. In Griffith, we considered "whether Penal Code Section
12.42(c)(2)(B) includes the statutory predecessors to the offenses enumerated therein." (33) We
determined that the statutory predecessors were included in the offenses enumerated in the
statute. (34) We reached the same result in Ex parte Ervin, finding that Section 508.149(a) of
the Government Code included the statutory predecessor offenses. (35) But the logic used by the
Court in Griffith and Ex parte Ervin does not apply to the statute at issue in this case. The text
of the statutes in Griffith and Ex parte Ervin did not refer to the predecessor offenses. (36) Here,
the predecessor offense is specifically enumerated in another part of the statute as an "offense
relating to the operating of a motor vehicle while intoxicated," (37) which may only serve as one
of two previous convictions required by Section 49.09(b)(2). (38) 

 Although the results under the DWI enhancement statute are inconsistent, our reasoning
in Griffith and Ex parte Ervin does not apply here. For the statute here to be analogous to
those in Griffith and Ex parte Ervin, we would have to subtract Section 49.09(c)(1)(B) from
the statute, which expressly refers to the statutory predecessor offense. Deleting part of a
statute is not within the province of this Court. (39) If Section 49.09 did not explicitly name
former Section 19.05(a)(2), then this case might have been on equal footing with Griffith and
Ex parte Ervin, where the statutes were silent about predecessor offenses in their entirety. 
Because the Legislature explicitly included the predecessor offense in this statute, I cannot
agree that our decisions in Griffith and Ex parte Ervin control. But I would urge the
Legislature to take a close look at the results under a plain reading of Section 49.09 when
considering the use of former Section 19.05(a)(2) for enhancement purposes.

 With these comments, I join the Court's opinion.


DATE DELIVERED: February 28, 2007

PUBLISH
1. Tex. Pen. Code Ann. § 49.04 (Vernon 2001).
2. Tex. Pen. Code Ann. § 49.09(b)(1) (Vernon 2005).
3. Tex. Pen. Code Ann. § 49.09(b).
4. Id.
5. Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex. Gen. Laws 1698,
1698, amended by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen.
Laws 3586, 3614, 3766.
6. See Tex. Pen. Code Ann. § 49.08(a) (Vernon 2003).
7. Ex parte Ervin, 991 S.W.2d 804, 815 (Tex. Crim. App. 1999).
8. Louviere v. State, No. 01-02-00594-CR (Tex. App.--Houston [1st Dist.] Feb. 20,
2003, no pet.).
9. 466 U.S. 668 (1984).
10. Ex parte Chandler, 182 S.W.3d 350, 353-54 (Tex. Crim. App. 2005) (quoting
Strickland, 466 U.S. at 694; citing Ex parte White, 160 S.W.3d 46, 49 (Tex. Crim. App.
2004)).
11. Ex parte Briseno, 135 S.W.3d 1, 12-13 (Tex. Crim. App. 2004).
12. Id.
13. Ex parte Chandler, 182 S.W.3d at 358.
14. Id. (quoting 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice §
18.1, at 2 (5th ed. 2000)).
15. Ex parte Welch, 981 S.W.2d 183, 184 (Tex. Crim. App. 1998) (citing Vaughn v.
State, 931 S.W.2d 564, 567 (Tex. Crim. App. 1996)). 
16. Ex parte Chandler, 182 S.W.3d at 359.
17. Ex parte Welch, 981 S.W.2d at 184.
18. Butler v. State, 499 S.W.2d 136, 139 (Tex. Crim. App. 1991) (citing Lamb v.
Beto, 423 F.2d 85, 87 (5th Cir. 1970); Gotcher v. Beto, 444 F.2d 696 (5th Cir. 1971)).
19. Ante, slip op. at 4.
20. Tex. Penal Code Ann. § 49.09.
21. Ex parte Davis, 412 S.W.2d 46, 52 (Tex. Crim. App. 1967).
22. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). 
23. Ex parte Ervin, 187 S.W.3d 386, 388 (Tex. Crim. App. 2005).
24. Id. (emphasis in original).
25. Id. (emphasis in original).
26. Id.
27. Tex. Penal Code Ann. § 49.09(b)(2).
28. See Ex parte Spann, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004); Muniz v.
State, 851 S.W.2d 238, 244 (Tex. Crim. App. 1993).
29. Tex. Penal Code Ann. § 49.09(c)(1)(B).
30. Id. § 49.09(b)(2).
31. 116 S.W.3d 782 (Tex. Crim. App. 2003).
32. Post, slip op. at 3.
33. Griffith, 116 S.W.3d at 784.
34. Id.
35. Ex parte Ervin, 187 S.W.3d at 388.
36. Id.; Griffith, 116 S.W.3d at 786.
37. Tex. Penal Code Ann. § 49.09(c)(1)(B).
38. Id. § 49.09(b)(2).
39. Ex parte Davis, 412 S.W.2d at 52.