Opinion issued February 10, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00246-CR

———————————

Anthino Bernard
Ballard, Appellant

V.

The State of Texas, Appellee



 



 

On
Appeal from the 174th District Court

Harris
County, Texas



Trial Court Case No. 1240388

 



 

MEMORANDUM OPINION

Appellant, Anthino Bernard Ballard, was
charged by indictment with theft.[1]  Appellant pleaded not guilty.  A jury found appellant guilty as
charged.  Appellant pleaded true to the
allegation in one enhancement paragraph that he had previously been convicted of
aggravated robbery, and the jury assessed punishment at 7 years’ confinement.  In two points of error, appellant challenges
the sufficiency of the evidence to establish: (1) that he stole stainless steel
of a value of $1,500 to $20,000; (2) his identity as the thief; and (3) that
his prior conviction of aggravated robbery was final.

We affirm.

                                                                                                                                                                
Background

Appellant was an employee of National Oil Varco in July
2008.  The location where appellant
worked handled repairs for drilling equipment used in the oil and gas
industry.  The day before any work on a
project was to begin, the necessary parts would be placed on pallets in one of
the staging areas.  Some of the staging
areas were inside the main building. 
Some of the staging areas were outside of the main building.  At time of the incident, the outside staging
areas were connected to the employee parking lot without any fencing to
separate the areas.  On July 18, 2009,
some parts had been placed on pallets in one of the outside staging areas for a
project that appellant and his group were slated to work on the next day.

A little after 5:00 a.m. the next morning, Edwin Carries,
another employee of National Oil Varco, was seated on some pallets outside the
main building as men in his group were cleaning out the work area with
blowers.  Carries was outside to avoid
breathing in the dust created by the blowers. 
As he sat outside in the dark, he saw appellant driving a forklift to
one of the pallets in the outside staging area, lift the pallet, and drive to
his car in the parking lot.  Carries then
saw appellant open one of the passenger doors and load the parts on the pallet
into his car.  Appellant got in his car
and drove away.  Carries reported what he
saw to his supervisor.

Carries testified that, though he did not know appellant
by name, he had seen him at work numerous times previously and recognized him
when he saw him take the missing parts. 
When he told his supervisor what he had seen, Carries gave a general
physical description of appellant and identified the group with whom appellant
worked.  Carries was later shown a photo
of appellant, and Carries identified appellant as the person he saw take the
missing parts.

Video surveillance from that morning was admitted into
evidence, comprising eight clips ranging from a few seconds to five minutes in
length.  The first clips show an SUV
driving onto the property and driving to an area outside of the view of the
surveillance cameras.  Another clip shows
a man walking from the area where the SUV had driven.  Other clips show the same or a similar man
driving a forklift.  In one clip, the
forklift is not carrying anything.  In
another clip, the forklift is carrying a pallet, driving in the direction the
SUV had driven earlier.  Subsequent clips
show the SUV driving away from that area and leaving the property.  None of the videos recording the relevant
events contain enough detail to identify the person in the video.  The time stamp on the video shows the
incident began around 5:09 a.m. and ended around 5:30 a.m.  Appellant clocked in for work that day at
5:51 a.m.

The parts were discovered to be missing the same day.  An inventory showed that 20 parts were
missing and that the parts had been purchased for a total of $5,475.16.  The evidence at trial established that all of
the stolen parts were made of stainless steel and could have been resold for a
total of $9,125.26.

At trial, during the punishment phase of the trial,
appellant pleaded true to allegations of certain prior convictions, including
the offense of aggravated robbery.  The
jury found this enhancement, among others, to be true and assessed punishment
at 7 years’ confinement.

                                                                                                                                   
Sufficiency of the Evidence

In two points of error, appellant challenges the
sufficiency of the evidence to establish: (1) that he stole stainless steel of
a value of $1,500 to $20,000; (2) his identity as the thief; and (3) that his
prior conviction of aggravated robbery was final.

A.              
Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying
the same standard of review, regardless of whether an appellant presents the
challenge as a legal or a factual sufficiency challenge.  See Ervin
v. State, No. 01–10–00054–CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston
[1st Dist.] Nov. 10, 2010, pet. filed) (construing majority holding of Brooks v. State, 323 S.W.3d 893, 912,
924–28 (Tex. Crim. App. 2010)).  This standard of review is the standard
enunciated in Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 
See Ervin, 2010 WL 4619329, at
*2.  Pursuant to this standard, evidence
is insufficient to support a conviction if, considering all the record evidence
in the light most favorable to the verdict, no rational fact finder could have
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; In re Winship, 397 U.S. 358, 361, 90 S. Ct.
1068, 1071 (1970); Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under
the Jackson standard in two
circumstances: (1) the record contains no evidence, or merely a “modicum” of
evidence, probative of an element of the offense, or (2) the evidence
conclusively establishes a reasonable doubt.  See
Jackson, 443 U .S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11,
2789; see also Laster, 275 S.W.3d at
518; Williams, 235 S.W.3d at 750. 

The sufficiency-of-the-evidence
standard gives full play to the responsibility of the fact finder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  An appellate court presumes that the fact
finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793.  In viewing the record, direct and
circumstantial evidence are treated equally; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and circumstantial
evidence alone can be sufficient to establish guilt.  Clayton,
235 S.W.3d at 778.  Finally, the
“cumulative force” of all the circumstantial evidence can be sufficient for a
jury to find the accused guilty beyond a reasonable doubt.  See
Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

B.              
Theft of Stainless Steel of a Value of $1,500 to
$20,000

In the first part of his first point of error, appellant
argues that the evidence was insufficient to establish beyond a reasonable
doubt that all of the items stolen were stainless steel and that they have a
value between $1,500 and $20,000.[2]

The indictment alleged that appellant, 

on or about July 19, 2008, did then and there unlawfully,
appropriate, by acquiring and otherwise exercising control over property,
namely STAINLESS STEEL, owned by HARRELL E. WHITNELL, hereafter styled
Complainant, of the value of over one thousand five hundred dollars and under
twenty thousand dollars, with the intent to deprive the Complainant of the
property.

The charge instructed the jury that they could only
find appellant guilty if they found

from the evidence beyond a reasonable doubt that on or
about the 19th day of July, 2008, in Harris County, Texas, the defendant,
Anthino Bernard Ballard, did then and there unlawfully, appropriate, by
acquiring or otherwise exercising control over property, namely, stainless
steel, owned by Harrell E. Whitnell, of the value of over one thousand five
hundred dollars and under twenty thousand dollars, with the intent to deprive
Harrell E. Whitnell of the property.

A person commits the offense of theft if he unlawfully
appropriates property with intent to deprive the owner of property.  Tex.
Penal Code Ann. § 31.03(a) (Vernon Supp. 2010).  The theft is a state jail felony if the value
of the stolen property is $1,500 or more but less than $20,000.  Id.
§ 31.03(e)(4)(A).  If personal property
is alleged in an indictment, that property must be sufficiently
identified.  Tex. Code Crim. Proc. Ann. art. 21.09 (Vernon
2009).  Proof of the identity of the
property as required by article 21.09 becomes a part of the State’s burden of
proof at trial.  Green v. State, 578 S.W.2d 411, 415 (Tex. Crim. App. 1979).  Accordingly, it was a part of the State’s
burden of proof to establish that the stolen parts were stainless steel and that
they had a value between $1,500 and $20,000. 
See Tex. Penal Code Ann. § 31.03(e)(4)(A); Tex. Code Crim. Proc. Ann. art. 21.09.

1.                
Stainless steel

Carries, the employee that witnessed the theft, said he
could see the parts that were on the pallet due to the bright lights that were
on just outside the main building. 
Carries testified that the parts were stainless steel.  Brad Ortego, a fraud examiner working for
National Oil Varco, testified that all of the parts that had been identified as
stolen had been on one pallet.  He also
testified that all of the parts on the pallet in question had been stolen.  Carries testified that different kinds of
materials are not mixed on one pallet.

Appellant argues that two of the witnesses, Randall
Strickland and Wesley Germany, testified that the stainless-steel supplies at
National Oil Varco were kept inside the building, while the theft described by
Carries occurred outside of the building.

Both Strickland and Germany testified that stainless steel
parts were stored inside the
building.  However, the uncontradicted
testimony at trial also established that, the day before any work on a project
was to begin, the necessary parts would be placed on pallets in one of the
staging areas.  Some of the staging areas
were inside the main building, while some of the staging areas were
outside.  Germany testified that he did not
know where the stolen parts were on the day that they were stolen.  Strickland, the general manager for that
location of National Oil Varco, was the only one to testify that the stolen
parts were inside the building on the day of the theft.  The final exchange on this matter occurred as
follows:

Q.      Okay.  The stainless steel material that was stolen
from [National Oil Varco] on July 19th, that was located inside of the
facility; is that not correct?

A.      Yes.

Q.      It
wasn’t located outside of the facility?

A.      No.

Q.      You’re
positive about that?

A.      Yes,
unless it was moved out. When it was brought out of the work-in-progress
inventory, it was staged up in that area. There’s [sic] forklifts in and out
all the time.

Strickland also testified that he did not do any
investigation on his own into the theft. 
Even if we were to take Strickland’s testimony as an unqualified
assertion that the stolen parts were inside the building at the time of the
theft, this testimony simply creates a conflict in the testimony.  It was within the jury’s discretion to
believe the testimony that the stolen parts were outside at the time of theft
and disbelieve the testimony that the stolen parts were inside.  See
Jackson, 443 U.S. at 319 (holding it is responsibility of jury to fairly
resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences
from facts); Williams, 235 S.W.3d at 750 (same).

Appellant also argues that “some of the materials
described were carbon rather than stainless steel.”  Appellant cites to Germany’s testimony that
two parts pictured in an exhibit were carbon, not stainless steel.  The relevant exhibit was introduced by
appellant and admitted for demonstrative purposes only.  The picture showed examples of what some of the
stolen items looked like.  No one
testified that the parts depicted in the exhibit were the actual stolen parts,
and no one testified that the parts depicted in the exhibit were of the same
material as the stolen parts.[3]  The material composition of the parts
depicted in appellant’s demonstrative example, then, is irrelevant to our
analysis of the sufficiency of the evidence to establish that the stolen parts
were stainless steel.

We hold that there was sufficient evidence in the record to
establish that the stolen parts were stainless steel.

2.                
Value between $1,500 and $20,000

An inventory showed that 20 parts were missing and that
the parts had been purchased for a total of $5,475.16.  One of the exhibits admitted into evidence
showed the name of the parts missing, the number of each part missing, the
purchase value, and the resale value. 
The evidence at trial established that all of the stolen parts were made
of stainless steel and could have been resold for a total of $9,125.26.

Appellant argues that there was no testimony as to the
value of the pieces which were described as carbon.  This argument is a continuation of
appellant’s argument that Germany testified that some of the parts depicted in
appellant’s demonstrative exhibit were made of carbon.  There was no testimony at trial that any of
the stolen parts were made of carbon. 
Accordingly, all of the evidence regarding the value of the stolen parts
related to stainless steel parts.

We hold that there was sufficient evidence in the record
to establish that the stolen parts had a value between $1,500 and $20,000.

C.              
Identity

In the second part of his first point of error, appellant
argues that there was insufficient evidence to establish that he was the thief.

A little after 5:00 a.m. on the day of the theft, Carries
was seated on some pallets outside the main building as men in his group were
cleaning out the work area with blowers. 
Carries was outside to avoid breathing in the dust created by the
blowers.  As he sat outside in the dark,
he saw appellant driving a forklift to one of the pallets in the outside
staging area, lift the pallet, and drive to his car in the parking lot.  Carries then saw appellant open one of the
passenger doors and load the parts on the pallet into his car.  Appellant got in his car and drove away.  Carries reported what he saw to his
supervisor.

Carries testified that, though he did not know appellant
by name, he had seen him at work numerous times and recognized him when he saw
him take the missing parts.  When he told
his supervisor what he had seen, Carries gave a general physical description of
appellant and identified the group appellant worked with.  Carries was later shown a photo of appellant,
and Carries identified appellant as the person he saw take the missing parts.

Video surveillance from that morning was admitted into
evidence, comprising eight clips ranging from a few seconds to five minutes in
length.  The first clips show an SUV
driving onto the property and driving to an area outside of the view of the
surveillance cameras.  Another clip shows
a man walking from the area where the SUV had driven.  Other clips show the same or a similar man
driving a forklift.  In one clip the
forklift is not carrying anything.  In
another clip, the forklift is carrying a pallet, driving in the direction the
SUV had driven earlier.  Subsequent clips
show the SUV driving away from that area and leaving the property.  None of the videos recording the relevant
events contain enough detail to identify the person in the video.  The time stamp on the video shows the
incident began around 5:09 a.m. and ended around 5:30 a.m.  Appellant clocked in for work that day at
5:51 a.m.

Appellant asserts that Carries testified that he did not
know whether the items on the pallet were stainless steel and was not sure
what, if anything, was stolen by appellant. 
The portion of Carries’s testimony that appellant cites concerns
Carries’s knowledge of what specific parts were stolen, not whether appellant
stole stainless steel.  In the same
portion of the record, Carries testified that he clearly saw that the parts
taken by appellant were stainless steel and that he saw appellant load these
parts into appellant’s car.

Appellant also complains of a portion of Carries’s
testimony where Carries watches the surveillance video and has trouble
identifying specifics of what he sees in the video.  Carries personally witnessed the offense take
place.  His testimony concerning his
ability to view details on the surveillance video does not conflict with his
testimony concerning what he personally saw.

We hold that there was sufficient evidence in the record
to establish that appellant was the thief. 
We overrule appellant’s first point of error.

D.              
Final Conviction of Aggravated Robbery

In his second point of error, appellant argues that there
is insufficient evidence in the record to support a finding that he had been
convicted of aggravated robbery as alleged in the enhancement paragraph.

At trial, during the punishment phase of the trial,
appellant pleaded true to certain convictions, including the offense of
aggravated robbery.  An exhibit admitted
into evidence showed that, in 1996, appellant was placed on deferred
adjudication for the offense of aggravated robbery.  Another exhibit established that he was found
guilty of the offense in 1998.  This
exhibit identified that appellant appealed the conviction on April 2, 1998 and the
appellate court issued a mandate on April 20, 1999.  The jury found the allegation in the
enhancement paragraph, among others, to be true and assessed punishment at 7
years’ confinement.

The general rule is that a plea of true to an enhancement
paragraph relieves the State of its burden to prove a prior conviction alleged
for enhancement and forfeits the defendant’s right to appeal the insufficiency
of the evidence to prove the prior conviction. 
Ex parte Rich, 194 S.W.3d 508,
513 (Tex. Crim. App. 2006).  There is,
however, a narrow exception to this general rule.  If the record affirmatively reflects that the
enhancement allegation was not true, such as affirmatively reflecting that the
judgment for the enhancement was not final, then a sufficiency of the evidence
point can be raised.  Id.  

If the State’s proof of a prior conviction shows on its
face that the conviction was appealed, then the State must also put on evidence
showing that the appellate court’s mandate has issued.  Ex parte
Chandler, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005).  The State is required to make a prima facie
showing of finality.  Jones v. State, 711 S.W.2d 634, 636
(Tex. Crim. App. 1986).

In this case, the exhibit that reflected that appellant
had appealed his conviction for aggravated robbery also reflected that the appellate
court issued its mandate.  Accordingly,
the record does not affirmatively reflect that the enhancement allegation was
not proper.  See Ex parte Rich, 194 S.W.3d at 513.  

Appellant argues that, although there is a notation on the
judgment for the aggravated robbery that the mandate had issued, the mandate
itself was not included in the record. 
There is no requirement that the mandate itself be introduced to prove
finality.  In Johnson, the Court of Criminal Appeals recognized that introducing
a mandate into evidence is not the only way to prove that a mandate was
issued.  See Johnson v. State, 784 S.W.2d 413, 414 (Tex. Crim. App. 1990)
(holding State failed to present mandate or any other manner of proof showing
disposition of appeal).  Additionally,
the only proof that appellant appealed his conviction was in a similar notation
in the same judgment.  To the degree that
a notation in a judgment is sufficient to show that an appeal had been taken, a
similar notation in the same judgment is sufficient to show that a mandate has
been issued.

We hold that the record does not affirmatively reflect
that the allegation in the enhancement paragraph was not true and that, by
pleading true to the enhancement allegation, appellant forfeited his right to
appeal the sufficiency of the evidence to prove the prior conviction.  We overrule appellant’s second point of
error.

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish.   Tex. R.
App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 31.03
(Vernon Supp. 2010). 

 





[2]           In one sentence in his brief, appellant also states, “A
material variance exists between an allegation in an indictment and the proof
at trial.”  An appellant’s brief must “contain
a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”  Tex. R.
App. P. 38.1(i).  If an argument
is not adequately briefed, there is nothing for the appellate court to review.  Russeau
v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).  To the degree that appellant intended this
sentence to create an additional point of error, it has been inadequately brief
and, accordingly, waived.





[3]           Although Germany testified that two of the parts depicted
in the demonstrative exhibit were made of carbon, he also testified that
National Oil Varco had both carbon and stainless steel versions of those parts.