*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-07-00594-CR

Velma Adam **CASTILLO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-0093
Honorable Philip A. Kazen Jr., Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   February 18, 2009

AFFIRMED

A jury convicted appellant Velma Castillo of assaulting a public servant. The trial court assessed punishment at a $1,500.00 fine and confinement in the Texas Department of Criminal Justice, Institutional Division, probated for five years. Castillo raises one issue on appeal, claiming her trial counsel was ineffective. We affirm the trial court's judgment.

## BACKGROUND

A police dispatcher sent San Antonio Police Officers Robert Valenzuela and Billy Mussey to respond to a call about a stolen truck. After investigating, they arrested Joe Castillo. Soon after the arrest, appellant Velma Castillo, Castillo's ex-wife, arrived. Appellant began to threaten the neighbor who had called police about the stolen truck, so officers decided to arrest her for "retaliation against the witness to another felony case." During their attempt to arrest and handcuff her, Officer Valenzuela testified appellant told him she was "going to kick [him] in [his] balls," after which she lifted one of her knees and "just as hard [and] as strong as she could . . . got [him] in the groin." Officer Valenzuela stated that both he and appellant fell to the ground. Appellant claimed her knee accidentally struck Officer Valenzuela during the fall.

## ANALYSIS

### *Applicable Law*

The defendant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Ex parte Chandler,* 182 S.W.3d 350, 354 (Tex. Crim. App. 2005); *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). A defendant establishes ineffective assistance of counsel by showing trial counsel's performance was deficient and the deficient performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 694 (1984); *Bone,* 77 S.W.3d at 833. To show counsel's performance was deficient, the defendant must show the performance fell below an objective standard of reasonableness. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Badillo v. State*, 255 S.W.3d 125, 129 (Tex. App.—San Antonio 2008, no pet.). We presume trial counsel acted within the proper range of reasonable and professional assistance and that his trial decisions were based on sound strategy. *Salinas v. State,* 163 S.W.3d 734, 740 (Tex. Crim. App.

2005). The defendant can overcome this presumption only by showing his allegations of ineffectiveness are firmly founded in the record, and the record affirmatively demonstrates the alleged ineffectiveness. *Thompson,* 9 S.W.3d at 814; *Badillo*, 255 S.W.3d at 129. We will not speculate as to the basis for counsel's actions and therefore if the record is silent on the reasoning behind counsel's actions, we will deny relief. *Badillo*, 255 S.W.3d at 129; *Stults v. State,* 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). To show counsel's deficient performance prejudiced him, a defendant must demonstrate there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Failure to prove either deficient performance or prejudice is fatal to any complaint of ineffective assistance. *Strickland,* 466 U.S. at 700; *Badillo*, 255 S.W.3d at 129. No court has ever interpreted the standard for reviewing trial counsel's performance to mean a defendant is entitled to "errorless or perfect counsel." *Ex Parte Welborn,* 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

### *Voir Dire*

Appellant first contends her trial counsel was ineffective because he failed to develop the possible biases of three potential jurors, Karla Escobar, Jose Ramos, and Mauricio Hernandez, who were chosen to serve on the jury. Appellant complains this failure precluded challenges for cause and an intelligent use of peremptory challenges.

When the State asked Ms. Escobar, a Bexar County felony probation officer, whether there was anything about her job that would cause her to be unfair to the State or the defendant she responded "No." She also told appellant's trial counsel that dealing with probationers would not

keep her from being a fair and impartial juror. When appellant's trial counsel asked whether she would find a police officer's testimony more credible than that of another witness, Ms. Escobar stated that it depended, but there was a chance. She never explained under what circumstances she might find an officer's testimony more credible than that of another witness. After hearing her response, appellant's trial counsel told the trial court he wanted to speak with Ms. Escobar individually at the bench. He then went on to question the next juror. However, when all individual voir dire was complete and the trial court asked each counsel who they needed to talk to at the bench, appellant's counsel did not ask to speak to Ms. Escobar.

During questioning by the State, Mr. Ramos admitted he had friends and family working in law enforcement, but said this would not automatically cause him to believe the defendant committed the crime – he would have to hear the evidence. Mr. Ramos also stated he had visited friends and family who were in the hospital as a result of assaults and had attended "a lot of officers [sic] funerals, too." But when asked if these experiences would make him inclined to find the defendant guilty, he said no, the State would have to prove the case beyond a reasonable doubt. Appellant's counsel did not ask Mr. Ramos any questions at that time, but during individual voir dire, appellant's counsel asked "Which is the gentleman that had a lot of family in law enforcement? Was that you, sir?" An unidentified juror responded and appellant's counsel asked that juror whether having family and friends in law enforcement would cause him to place more importance on an officer's testimony or to consider the testimony more credible. The juror replied, "Probably not . . . I'd analyze it more, but I wouldn't favor them more." Appellant's trial counsel asked the juror what he meant by "analyzing it more," and the juror said it meant he would listen to both sides carefully. He also stated he would not hold an officer's testimony to any higher or lower standard

simply because he was a police officer. Though the juror was not identified on the record, only one juror – Mr. Ramos – claimed to have "a lot" of friends and family in law enforcement.

Mauricio Hernandez, a police officer, was the next juror questioned. The State asked him if he had heard the exchange with Mr. Ramos and whether he would also require the State to prove its case beyond a reasonable doubt before finding the defendant guilty. Officer Hernandez said he would. Appellant's counsel did not ask Officer Hernandez any questions.

Appellant's claim regarding Mr. Ramos is without merit because counsel did exactly what appellant complains counsel failed to do. Trial counsel individually questioned Mr. Ramos about his ties to law enforcement and explored whether those ties would cause him to give more credence to a police officer's testimony. Mr. Ramos told counsel he would not favor an officer's testimony more than that of any other witness. Trial counsel attempted to develop a possible bias by Mr. Ramos, but Mr. Ramos denied any bias in favor of a police officer or his testimony. Accordingly, appellant has not established by a preponderance of the evidence that counsel's performance was deficient. *See Chandler*, 182 S.W.3d at 354; *Bone*, 77 S.W.3d at 833.

Trial counsel's failure to further question Ms. Escobar and question Officer Hernandez is somewhat troubling. However, it would be pure speculation to hold trial counsel's performance was deficient. Trial counsel effectively questioned another member of the venire about her biases, exposing a potentially biased juror:

> Trial counsel: Does anybody here on the jury panel feel that if an officer took the stand in a uniform, that they would hold . . . their testimony to be more credible than as to – as opposed to a lay witness? Does anybody feel that way? Yes, ma'am. You're Juror Number?

Potential Juror: I'm 31.

. . .

Potential Juror: I wasn't thinking that I'd hold them more credible, but my father was in security and he actually got assaulted, and I'm a little sensitive on that. . . . And my uncle is a police officer and was assaulted.

. . .

Trial Counsel: Okay. Your father was assaulted. Do you know the circumstances regarding that assault? Like what happened?

Potential Juror: He was stopping a robbery. . . . And in the process of stopping, he got assaulted by the – . . . by three people.

Trial Counsel: And your uncle, do you know the circumstances regarding his assault?

Potential Juror: No, I don't know exactly. I mean I just know he was injured.

Trial Counsel: Well, based on that knowledge you have, however limited it is, would that cause you . . . not to be fair and impartial in rendering a decision in a case specifically regarding assaulting a police officer or public servant?

Potential Juror: I'm not for sure. I'm just very – I'm very sensitive with that, and I mean, it just has affected me before in the past, so I'm not completely sure about [it].

Trial counsel asked to speak to this juror at the bench and asked her if she could be fair and impartial given her experiences. She said she "probably couldn't," but agreed with the State that she would not automatically find appellant guilty, would base her decision on the evidence, and would hold the State to its burden of proof. Trial counsel's questioning of this potential juror demonstrates he had a clear understanding of the potential biases that existed and how to expose them out.

Trial counsel could have decided not to ask additional questions of Ms. Escobar and Officer Hernandez based on their demeanor, tone, and body language. *See Mooney v. State*, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991) (holding that demeanor, tone of voice, etc. are important factors to consider in making voir dire decisions). Trial counsel was never afforded an opportunity to explain his decision. Without such explanation, we would be forced to speculate as to his reasoning. Because appellant's allegations about ineffectiveness are not firmly founded in the record and the record does not affirmatively demonstrate ineffectiveness, he has failed to meet his burden. *See Thompson*, 9 S.W.3d at 814; *Badillo*, 255 S.W.3d at 129.

### *Admission of Photographs*

Appellant next contends her trial counsel was ineffective because he introduced into evidence three photographs of appellant's house. Appellant argues trial counsel should not have introduced the photographs into evidence because the State used them to its advantage during cross-examination and closing argument.

During counsel's direct examination of appellant, he asked her to identify three photographs. Appellant testified they depicted "the front of the garage and the next door neighbor's house where the truck was before," "inside the garage, looking into the front door," and "the front of the house from across the street." After the photographs were admitted, appellant's trial counsel published them to the jury, stating "Now, we have the photographs, so that way [the jurors] know a little bit about what you're talking about, the layout." Appellant's counsel then elicited testimony from appellant about what happened the day she was arrested. This included having appellant describe where people were standing relative to the garage.

The State used one of the photographs during its cross-examination of appellant to get her to admit the driveway was on an incline leading into the garage, which would have allowed Mary Lou Rodriguez to see the driveway and into the garage even if she was standing across the street. During its closing argument, the State used this to counter appellant's argument that Mary Lou Rodriguez's could not have seen appellant assault Officer Valenzuela.

Counsel's use of the photographs to assist the jury in understanding appellant's testimony was a sound strategy. Trial counsel's introduction and use of the photographs was not "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003). That another attorney in hindsight – after the State turned the evidence to its advantage – might have decided not to introduce the photographs, is insufficient to establish ineffective assistance of counsel. *See Miniel v. State*, 831 S.W.2d 310, 325 (Tex. Crim. App. 1992), *cert denied*, 506 U.S. 885 (1992). Accordingly, the introduction of the photographs of the front of appellant's home will not support a claim of ineffective assistance of counsel.

### *No Objection to Prejudicial Evidence*

During the State's cross-examination of appellant's nephew, the State asked if the nephew knew appellant was "intending to sue the San Antonio Police Department" based on the events that lead to her arrest. He replied he had no idea what she was going to do. When the State cross-examined appellant, it asked if she would be claiming pain and suffering when she filed her lawsuit against the City of San Antonio. Trial counsel objected stating, "We're not indicating that anybody's filing a civil lawsuit." The trial court overruled the objection. The State then continued, asking

appellant if she was going to file a suit against the City. Appellant said she would "if [Officer Valenzuela] hurt me . . . when I didn't do anything wrong." The State then used appellant's intent to file a civil suit in its closing argument to challenge her credibility.

Appellant contends trial counsel's failure to object to the testimony cited above, or to object more specifically based on rules 402 and 403 of the Texas Rules of Evidence rendered his assistance ineffective. There is nothing in the record to explain counsel's strategy for his single, non-specific objection. Without such explanation, we would be forced to speculate as to his reasoning. Because appellant's allegations about ineffectiveness are not firmly founded in the record and the record does not affirmatively demonstrate ineffectiveness, appellant has not sustained her burden and we must deny relief. *See Thompson*, 9 S.W.3d at 814; *Badillo*, 255 S.W.3d at 129.

### *Invitation of Harmful Testimony*

The boyfriend of appellant's daughter was called by trial counsel as a defense witness. The boyfriend essentially testified appellant was not resisting arrest and the officers used excessive force during the arrest. On cross-examination, the State asked what the boyfriend saw appellant do with her knee. He responded that when appellant and Officer Valenzuela fell, appellant's knee "fell into one of the officers," implying the alleged assault was really an accident. The State's attorney then showed the boyfriend a statement he had given to internal affairs and, based on his reading of the statement, the boyfriend admitted he told internal affairs that appellant had "turned and kneed somebody . . . the Hispanic officer." On redirect, trial counsel asked the boyfriend if it was possible that if appellant's knee did make contact with an officer, it could have been from the struggle and the fall rather than an intentional act. The boyfriend responded that he did not think appellant acted

intentionally. This prompted the State, on re-cross, to ask whether the boyfriend believed appellant accidentally kneed the officer in the groin. When he said "yes," the State asked if he thought appellant acted recklessly – "[l]ike she didn't mean to do it, but she was in real close proximity and she did put her knee up." The boyfriend said "yes," initially, but explained appellant did not stick her knee up, rather any contact occurred during the fall: "[f]alling down, as in the knee hit [the officer's] leg not, as in her knee went up to intentionally kick him with it." The boyfriend stuck to his testimony despite the State's best efforts to have him concede it was something other than an accident.

Appellant contends that by calling the boyfriend as a witness and asking if appellant acted intentionally, the State was allowed to elicit testimony that appellant acted recklessly, and then argue to the jury that appellant's own witness proved she committed the charged offense. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (Vernon Supp. 2008) (stating that assault on public servant can be committed intentionally, knowingly, or recklessly). According to appellant, this demonstrates ineffective assistance of counsel. We disagree.

From the record, it is clear trial counsel's strategy was to establish the officers used excessive force, prompting the struggle that resulted in a fall. According to the defense, it was during the course of the fall that appellant's knee may have accidentally come into contact with Officer Valenzuela's groin. Trial counsel called the boyfriend and several other witnesses to support this defense. Calling the boyfriend to testify was therefore part of trial counsel's overall strategy and defense. Without evidence to the contrary, we presume this was sound strategy and counsel's actions were within the range of reasonable, professional assistance. *See Salinas*, 163 S.W.3d at 740.

Moreover, despite the State's attempt to confuse the boyfriend and its subsequent argument to the jury, the boyfriend clearly testified that any contact between appellant's knee and Officer Valenzuela's groin was accidental, a result of the fall. This testimony benefitted the defense. The State's attempt to turn the evidence to its advantage and convince the jury it supported the State's case did not render trial counsel ineffective. Accordingly, the decision to call the boyfriend as a witness and have him testify appellant did not act intentionally will not support a claim of ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing, we overrule appellant's issue and affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do Not Publish