In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00616-CR
_____

**JAMAR JOSEPH A/K/A JAMAR KEITH JOSEPH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 11-10938**

**MEMORANDUM OPINION**

Jamar Joseph[1] appeals his conviction for unlawfully possessing a firearm. *See* Tex. Penal Code Ann. § 46.04(a)(1) (West 2011). Joseph argues the trial court erred by admitting a firearm into evidence during his trial, and he contends that he received ineffective assistance of counsel. We conclude the trial court did not abuse its discretion by admitting the firearm into evidence. On the record that is

---

[1]The indictment alleges that Joseph is also known as Jamar Keith Joseph.

1

before us, we also conclude that Joseph has not demonstrated that he received ineffective assistance of counsel. We affirm the trial court's judgment.

Background

In December 2010, Joseph was a passenger in a vehicle that Deputy Barbara Bienvenue of the Jefferson County Sherriff's Department stopped for a traffic violation. Deputy Bienvenue arrested Joseph after she determined that Joseph had outstanding traffic warrants.

Deputy Bienvenue testified during Joseph's trial. According to Deputy Bienvenue, after Joseph was taken to the jail, she was asked to return to the book-in area of the jail. On returning to that area, Sergeant Lawrence Flannigan Jr., who had assisted her at the scene of Joseph's arrest, handed Deputy Bienvenue a handgun that had been given to him by one of the book-in officers at the jail. Deputy Bienvenue identified the handgun during the trial as "the weapon that was handed to me at the jail[.]" Before the handgun was admitted into evidence, Joseph's attorney took Deputy Bienvenue on voir dire and asked several questions about the handgun; Deputy Bienvenue's responses reflect that she did not see the handgun when it was taken from Joseph. Although Joseph's attorney lodged an objection to admitting the handgun, the trial court, based on Deputy Bienvenue's testimony, admitted the handgun into evidence. During cross-examination, Deputy

2

Bienvenue stated without objection that she was told that the handgun was the one that had been taken from Joseph.

Sergeant Flannigan also testified during Joseph's trial. Sergeant Flannigan testified that he responded to Deputy Bienvenue's request for assistance. He explained that after he arrived at the scene of the traffic stop, he conducted a pat-down search of Joseph but found no weapons at that time. After taking Joseph to jail, one of the book-in officers, Officer Sellers, asked Sergeant Flannigan to come to the book-in desk. Officer Sellers handed Sergeant Flannigan a small handgun and told him that Officer Romero found the handgun on Joseph. The testimony about what Officer Sellers told Sergeant Flannigan was admitted without objection during Sergeant Flannigan's cross-examination. Sergeant Flannigan also explained that shortly after Officer Sellers gave him the handgun, he gave it to Deputy Bienvenue.

Officer Romero also testified during Joseph's trial. According to Officer Romero, he was on-duty as the pat-down officer when Joseph was jailed. A video-camera was used to tape Officer Romero's search. The video was admitted into evidence and shows Officer Romero finding an object on Joseph during the search at the jail. According to Officer Romero, he discovered that Joseph had a small caliber firearm concealed beneath his pants. Officer Romero testified that he took a

3

".380 semi-automatic" from Joseph, that he then handed the weapon to Officer Sellers, who then gave it to Sergeant Flannigan. While the testimony shows that Officer Romero acknowledged that he did not know if the gun admitted during the trial was the same gun as the one he had taken from Joseph, after looking at the handgun that was in evidence, Officer Romero testified: "It looks to be the one that I took off Joseph."

On appeal, Joseph argues that the handgun was not properly authenticated by Deputy Bienvenue as the gun taken from him. Joseph contends that gaps in the handgun's chain of custody prevent the handgun from being linked to him. An abuse of discretion standard is used to review a trial court's decision to admit evidence. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). A preliminary question regarding whether an exhibit asked to be admitted as evidence is authentic is reviewed by examining "whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.*

When the trial court admitted the handgun, Deputy Bienvenue was the only witness who the State had used to authenticate the handgun; however, the evidence before the trial court at that stage reflects that Deputy Bienvenue lacked personal

knowledge about whether the handgun shown to her at trial was the one removed from Joseph when he was jailed.

Neither of the parties' briefs discusses the authentication requirements of Rule 901 of the Texas Rules of Evidence; nevertheless, it is the Rule of Evidence that governs the requirement concerning the authentication or identification of evidence.[2] Rule 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). Rule 901(b) then lists ten illustrations as examples of authentication or identification that conform to the requirements of the rule. *See id.* 901(b). Authentication is a matter of conditional relevancy under Rule 901, which means that the party satisfies the condition by offering "'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007) (quoting Tex. R. Evid. 901(a)). "When the relevance of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence contingent upon the introduction of evidence sufficient to support a finding of the fulfillment of the

[2]We further note that the State's response to Joseph's first issue, which addresses the trial court's decision to admit the handgun, cites no cases in support of the State's argument.

condition." *Layton v. State*, 280 S.W.3d 235, 241 (Tex. Crim. App. 2009) (citing Tex. R. Evid. 104(b)). In this case, Deputy Bienvenue's testimony is only a part of the State's proof that the handgun admitted into evidence was the same handgun taken from Joseph.

Nevertheless, assessing whether the trial court committed error requires that we look at the evidence introduced before the trial court admitted the handgun offered by the State, and the record is clear that Deputy Bienvenue "did not see [the handgun] come off of Mr. Joseph." When the trial court admitted the handgun, Officer Romero had not yet testified. Also, when the handgun was admitted, the trial court did not expressly state that the handgun was only being conditionally admitted subject to the State's offering further evidence that it was the handgun taken from Joseph.

Nevertheless, even if the trial court erred by admitting the handgun before the State laid a sufficient foundation to show that the handgun was the one removed from Joseph, Officer Romero's subsequent testimony that the handgun looked like the one he took from Joseph provides an adequate foundation for the trial court's decision to admit the handgun. Rule 901 creates a gatekeeping function that can be cleared by circumstantial evidence. *See Campbell v. State*, 382 S.W.3d 545, 549-50 (Tex. App.—Austin 2012, no pet.). The testimony of Sergeant

Flannigan and that of Deputy Bienvenue, relating how each had gained possession of the handgun, are additional circumstances that, in light of Officer Romero's testimony, allowed the jury to decide whether the handgun admitted into evidence was the handgun Joseph had at the jail.

Assuming the trial court's decision to admit the handgun was premature and that it was error, a violation of evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See Campbell*, 382 S.W.3d at 552. In a harm evaluation under Rule 44.2(b), any non-constitutional error "'that does not affect substantial rights must be disregarded.'" *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008) (quoting Tex. R. App. P. 44.2(b)). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

In identifying an object for admissibility, it is sufficiently identified "if the evidence is sufficient to support a finding that the matter in question is what its proponent claims." *Druery*, 225 S.W.3d at 503. Generally, absent evidence of tampering or fraud, "problems in the chain of custody do not affect the admissibility of the evidence." *Id*. The record in Joseph's case does not show either tampering or fraud with respect to how the police obtained the handgun. Officer

7

Romero's testimony that the handgun looked like the one he took from Joseph, the testimony of Sergeant Flannigan that Officer Sellers handed him a handgun and told him that Officer Romero had found the handgun on Joseph, and the testimony of Deputy Bienvenue that the handgun in evidence was the one that Sergeant Flannigan had handed her at the jail supports the trial court's decision to admit the handgun and to allow the jury to resolve whether the handgun in evidence was the same handgun that Joseph had at the jail. *See Tienda*, 358 S.W.3d at 638 ("The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic."). Although Joseph points to conflicts in the evidence, it is generally the jury's responsibility to determine the credibility of each witness and to resolve any conflicts in the evidence. *See Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

We conclude that Joseph's substantial rights were not affected even if the admission of the handgun was premature. Subsequent evidence admitted during trial sufficiently identified the handgun under the requirements of Rule 901(a). *See* Tex. R. Evid. 901(a). Assuming the trial court prematurely admitted the handgun,

such error, on the record before us, was harmless. *See* Tex. R. App. P. 44.2(b). We overrule issue one.

Ineffective Assistance

In his second issue, Joseph argues that he received ineffective assistance of counsel because his trial attorney failed to object or should have raised other objections to several of the questions and statements made by the prosecutor during his trial. Joseph points out that there were occasions where his attorney could have objected to the prosecutor's leading of witnesses, the introduction of irrelevant evidence, the admission of out-of-court statements made by others, nonresponsive answers of witnesses, and various aspects of the prosecutor's closing arguments.

We apply a two-pronged test to resolve ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish the ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at

687, 694; *Garza*, 213 S.W.3d at 347-48; *Thompson*, 9 S.W.3d at 812. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Thompson*, 9 S.W.3d at 812. But, as *Garza* explained, our review of ineffective assistance claims is "highly deferential" to trial counsel, as we presume "that counsel's actions fell within the wide range of reasonable and professional assistance." *Garza*, 213 S.W.3d at 348.

In reviewing complaints about trial counsel's alleged deficiencies, an appellate court must "avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813. Trial counsel's decisions are viewed with great deference when trial counsel's reasons for not undertaking a suggested strategy do not appear in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Joseph did not file a motion for new trial, and the record, regarding counsel's explanation of his strategy, is silent.

"A *Strickland* claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Id.* (quoting *Thompson*, 9 S.W.3d at 813, 814 (declining to speculate on counsel's failure to object to hearsay in light of a silent record)). Generally, when faced with a record that does not include an explanation of trial counsel's trial strategy, the record that is before the appellate court is deemed to be insufficient to demonstrate that trial

10

counsel's conduct was ineffective, unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Having carefully reviewed the record, we conclude that Joseph's complaints that he received ineffective assistance of counsel require a more developed record. Consequently, we cannot second-guess trial counsel's strategy because the record does not show that no competent attorney would have handled the matters in the manner they were handled. *See id.* (evaluating whether challenged conduct was "'so outrageous that no competent attorney would have engaged in it'"); *see also Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("[A] reasonably competent counsel need not perform a useless or futile act[.]"). Because Joseph's ineffective assistance claim is not firmly founded in the record, we overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 28, 2013
Opinion Delivered June 12, 2013
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

11