**Opinion issued June 13, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00216-CR

————————————

**DANA LATRAY NEALY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Case No. 16CR1982

## MEMORANDUM OPINION

Appellant Dana Latray Nealy was convicted of the third-degree felony offense of harassment in a correctional facility.[1] After finding an enhancement paragraph to be true, the jury assessed her punishment at 3.75 years' incarceration in the Texas

---

[1]    TEX. PENAL CODE § 22.11(a)(1) & (c).

Department of Criminal Justice—Institutional Division.[2] In five issues, Nealy argues: (1) her punishment violates the constitutional prohibition against cruel and unusual punishment, (2) the statute she was convicted of violating is unconstitutional, (3) she received ineffective assistance of counsel, (4) her prosecution for this offense violates the Double Jeopardy clauses in the United States and Texas Constitutions, and (5) there is insufficient evidence supporting her conviction.[3] Finding no reversible error, we affirm the trial court's judgment.

## Background

Nealy went to her cousin's home to retrieve a game console, but she was not allowed to go inside because there were children present and her cousin and a man at the residence believed Nealy was high on something. After Nealy pushed her way into the home, the man dragged her back outside. Nealy, who jammed her toe during this altercation, called 911 and reported that she had been assaulted.

Officer Boyd and Officer Velasquez of the Dickinson Police Department were dispatched to the residence to investigate Nealy's report. Officer Boyd, who was the

---

[2]    Nealy's punishment was enhanced to a second-degree felony because the jury found that she had been convicted of a prior felony offense. *See* TEX. PENAL CODE § 12.42(a); *see also* TEX. PENAL CODE § 12.33(a) (stating second-degree felonies are punishable by imprisonment "for any term of not more than 20 years or less than 2 years").

[3]    Nealy's claims based on the constitutionality of section 22.11 of the Texas Penal Code, double jeopardy, and sufficiency of the evidence are potentially dispositive and would afford her the most relief. Therefore, we will address those issues before her claims of cruel and unusual punishment and ineffective assistance of counsel.

first to arrive at the scene, approached Nealy who was attempting to drive away. Nealy's young daughter was also in the vehicle. After briefly speaking with Nealy, Officer Boyd instructed her to park her vehicle because Officer Velasquez needed to get some additional information from her.

Officer Velasquez, who noticed signs of intoxication when he spoke with Nealy, had her perform some field sobriety tests to determine if she was intoxicated. Officer Velasquez testified that Nealy showed all six clues of intoxication on the horizontal gaze nystagmus test. At trial, Nealy denied that she was under the influence of any substance the day she went to her cousin's home, but she admitted that she used marijuana and PCP.

When Officer Velasquez asked Nealy if she was "on" something, Nealy denied that she was "on" anything and she put her seatbelt back on and tried to drive away. The officers stopped Nealy from leaving and arrested her for public intoxication. Nealy, however, refused to cooperate when the officers attempted to take her into custody and had to be handcuffed and forced into the backseat of Officer Velasquez's patrol car by three officers.

Nealy cried and screamed obscenities at Officer Velasquez during the drive to the Dickinson jail. Although she was compliant when she walked into the booking area, Nealy became irate again when a female jailer tried to search her, and she had to be physically restrained by Officer Velasquez. Nealy refused to walk to her cell

3

and she had to be taken there by force. She banged on the cell door with her fists and feet for almost half an hour after the officers left her cell and she repeatedly spat on the cell door's window.

Later that evening, Nealy took off her dress and wrapped it around her neck and yelled that was going to hurt herself. Although she told the jailer that she wanted to commit suicide, Nealy testified that she was only acting like she was going to kill herself because she wanted the officers to pay attention to her. When Officer Velasquez checked on Nealy to assess whether she posed a suicide risk, Nealy tried to push him out of the way and walk out of her cell. She became more aggressive and combative after he pushed her back inside. She also shoved Officer Velasquez from behind as he walked out of the cell.

Nealy spat on the cell door's window multiple times after he left, and she yelled to Officer Velasquez that she wanted to fight him. Officer Velasquez and the jailer were standing outside Nealy's cell door at the time.

Nealy needed to be moved from Dickinson to the Galveston County Jail where she could post bond. The deputy who had been sent to transport Nealy to the county jail refused to move her after she told him that he was "just like them." Nealy began shaking in apparent anger and refused to comply.

After giving Nealy multiple opportunities to walk back to her cell, the deputy and Officers Boyd and Velasquez dragged her back to her cell while she kicked and

4

fought and screamed more obscenities. They were eventually able to get Nealy back in the cell with some help from a jailer.

The struggle began again when Nealy grabbed the jailer's pants leg as she tried to leave the cell and refused to let go. Officer Boyd came back and tried to restrain Nealy by pinning her to the ground. Nealy struggled and yelled obscenities and tried to grab Officer Boyd's baton and radio. Officer Velasquez also tried to pin her down using his body weight. Officer Boyd testified that he was trying to control Nealy's arms and he "heard her spit about the time [he] got face-to-face" with her. Nealy did not spit on Officer Boyd, however, because he had his hand around her chin again and her face was turned away. However, Officer Boyd let go of Nealy's chin after she grabbed his radio, and "that's when she spit in [his] face." Some of the spit got in Officer Boyd's right eye. This caused Officer Boyd to shut his eyes.

Nealy admitted that she grabbed Officer Boyd's radio during the struggle, but she repeatedly denied spitting in his face and claimed that she only spat on the window. "I spit on the window, like, plenty of times. But at the end of the day, I never spit on the officer." "I never spit on any person. I only spit on the window." Nealy also denied that she had any "intent to assault, harass, or alarm" Officer Boyd by causing him to come into contact with her saliva.

**A.      Charges**

Nealy was indicted for harassment by a person in a correctional facility under Penal Code section 22.11(a)(1).[4] The indictment alleges that Nealy "while imprisoned or confined in Dickinson Jail, a detention facility, and with intent to assault, harass, or alarm, cause[d] Cleveland Boyd to contact the saliva of the defendant." Nealy was also charged with public intoxication, resisting arrest, and assault against Officer Velasquez, a Class C misdemeanor.[5] According to Nealy, she was charged with spitting on Officer Velasquez because of her actions in the Dickinson jail. She further contends that although both offenses "arose from the same incident, and both alleged the same spit," the offense against Officer Velasquez was charged as a Class C misdemeanor, whereas the offense against Officer Boyd was charged as a third-degree felony.

On November 27, 2017, Nealy pleaded "no contest" to the public intoxication charge, a Class C misdemeanor, and the Dickinson Municipal Court sentenced her to a fine of $300.

---

[4]    Nealy was initially indicted for harassment of a public servant under Penal Code section 22.11(a)(3). The State subsequently re-indicted her for harassment by person in a correctional facility under Penal Code section 22.11(a)(1).

[5]    The record does not include a copy of the indictment for assault against Officer Velasquez or a copy of Nealy's plea papers.

**B.     Pretrial**

The record reflects that Nealy believed that the charge for spitting on Officer Boyd had been dropped and she did not understand why she was going on trial in this case. The trial judge addressed Nealy's concerns during a pretrial hearing.

> Trial Judge: Ms. Nealy, I understand you have some concerns or confusion about this case and the facts and the issue?
>
> Nealy: Yes. And I went to court already in Dickinson behind the same charge. They already dropped -- dropped and dismissed my charges. And I already did seven months behind this same charge, and I'm just trying to figure out why am I --
>
> Trial Judge: Okay. My understanding is you were charged in Dickinson or some place for public intoxication; is that correct?
>
> Nealy: Uh-huh.
>
> Trial Judge: And you were taken to the Dickinson jail, and while there, you committed the offense that we are here for today.
>
> Defense Counsel: Allegedly.
>
> Trial Judge: Allegedly. Allegedly, yes. So, those are two separate offenses. You did whatever was necessary to satisfy the system for the public intoxication; but the harassment is a separate incident, separate thing, and it's separate from the public intoxication.
>
> Nealy: It was -- it was the same thing. It was a spitting in the police face. They -- they said I spit in the police face. It was for the officer. I – that never happened.
>
> Trial Judge: Well, I don't know if it did or not. That's why we're saying "allegedly." But I'm telling there are two separate offenses.
>
> . . . .

Prosecutor: I think where some of her confusion may be is she was also charged with a Class C Assault by Contact on Officer Velasquez, which she pled to. This is on a separate officer. So, that may be some of her confusion when she's thinking she pled to an assault, which she did on an officer. It was a Class C and separate from another officer.

Trial Judge: Okay. All right. Well, this is a whole separate matter, separate trial, and separate everything. So, while I understand, you think you've paid your debt to society, you have not in this one. And if you are found guilty, again the charges are not -- have not been proven, it is a separate offense.

## C. Trial

Officer Boyd, Officer Velasquez, Nealy, and others testified at trial. The State also introduced videos taken by Officer Boyd's and Officer Nealy's body cameras, as well as surveillance videos taken of the inside of Nealy's cell, the hallway near Nealy's cell, and the booking area. Nealy's counsel argued that none of the videos showed her spitting on Officer Boyd. The State acknowledged during closing argument that although one of the videos showed Nealy lifting her head up during her struggle with Officer Boyd, "[t]here's a time stamp on it, and it kind of blocks whatever comes out of her mouth." After hearing all the evidence, the jury found Nealy guilty as charged.

During the sentencing phase, the State introduced evidence of Nealy's 2001 conviction for delivery of a controlled substance and 2017 conviction for public intoxication. The jury was instructed that because Nealy had pleaded true to being convicted of a prior felony as alleged in the enhancement paragraph, the jury was

8

required to assess her punishment of not less than two years and no more than twenty years' confinement in TDCJ, plus a fine not to exceed $10,000.

The jury assessed Nealy's punishment at 3.75 years' confinement.

## Constitutionality of Section 22.11

In her second issue, Nealy argues that section 22.11 is unconstitutional because it is so vague that "it allows the State unbridled power to pick and choose whether they want to charge a person with a Class C or a felony for the same act." According to Nealy, the statute's infirmities are evidenced by the fact that the State was able to charge her with a third-degree felony for spitting on Officer Boyd and a Class C misdemeanor for spitting on Officer Velasquez, even though both offenses "arose from the same incident, and both alleged the same spit."

The State contends that Nealy is challenging the constitutionality of section 22.11 for the first time on appeal and, therefore, she has not preserved this issue for our review. Both facial constitutional challenges to statutes and as-applied constitutional challenges must be preserved in the trial court and cannot be raised for the first time on appeal. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (facial constitutional challenge); *Curry v. State*, 910 S.W.2d. 490, 496 (Tex. Crim. App. 1995) (as-applied constitutional challenge). Nealy acknowledges that

9

her counsel "failed to challenge the constitutionality" of section 22.11 in the trial court. Accordingly, we hold that error was not preserved. TEX. R. APP. P. 33.1(a).[6]

We overrule Nealy's second issue.

## Double Jeopardy

In her fourth issue, Nealy argues that the State violated her right against double jeopardy by prosecuting her for committing the charged offense against Officer Boyd. Specifically, Nealy contends that she should not have been prosecuted for committing the charged offense against Officer Boyd because she had already pleaded guilty to, and been convicted of, committing a Class C misdemeanor offense of assault against Officer Velasquez for actions that occurred during the same transaction.[7]

### A.   Preservation

Generally, a double jeopardy claim must be raised in the trial court to preserve the error for appellate review. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). Nealy suggests that she preserved this issue by bringing her Class C misdemeanor for spitting on Officer Velasquez to the court's attention during the

---

[6]     Unlike Nealy's double jeopardy and cruel and unusual punishment arguments, it is not necessary for us to consider the merits of Nealy's constitutional challenge in order to address her ineffective assistance of counsel argument on this ground.

[7]     The record does not include a copy of the indictment for misdemeanor assault or a copy of Nealy's plea agreement.

10

pretrial hearing. Even assuming without deciding that Nealy's double jeopardy claim is preserved for our review, she would not prevail on the merits.

**B.     Standard of Review and Applicable Law**

Double jeopardy raises a legal issue of constitutional dimensions; we review de novo a trial court's disposition on double jeopardy grounds. *See United States v. Arreola–Ramos*, 60 F.3d 188, 191 (5th Cir. 1995); *Ex parte Peralta*, 87 S.W.3d 642, 645 (Tex. App.—San Antonio 2002, no pet.).

The Fifth Amendment to the United States Constitution provides that a person shall not be twice put in jeopardy for the same offense. *See* U.S. CONST. amend. V. The Fifth Amendment's protection against double jeopardy is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Brown v. Ohio*, 432 U.S. 161, 164 (1977). The Texas Constitution provides substantially identical protections against double jeopardy. *See* TEX. CONST. art. I, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.").

The threshold question in a double-jeopardy analysis is whether the defendant is being punished or prosecuted for the "same offense." *State v. Perez*, 947 S.W.2d 268, 270 (Tex. Crim. App. 1997) (citing *United States v. Dixon*, 509 U.S. 688, 696 (1993)). In determining whether the offenses are the same, we inquire into legal

sameness and factual sameness. *Ex parte Castillo*, 469 S.W.3d 165, 172 (Tex. Crim. App. 2015). Legal sameness depends on the pleadings and statutory law to ascertain whether two offenses are the same. *Id.* at 172. When two different statutory provisions are at issue, we determine legal sameness by applying the "same-elements test" to determine whether "each provision requires proof of a fact which the other does not." *Id.* at 168 (quoting *Dixon*, 509 U.S. at 697).

If the offenses are legally the same, the next step is to determine whether the offenses are factually the same. *Id.* at 169 (citing *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015)). In determining whether the offenses are factually the same, we determine the allowable unit of prosecution and then review the trial record to establish how many units have been shown. *Id*. For double jeopardy purposes, assaults on different victims represent factually separate offenses. *See id.* at 171–72. The burden is on the appellant to prove legal sameness and factual sameness. *Id.*

Assuming without deciding that Nealy's misdemeanor and felony offenses are legally the same, these offenses are not factually the same because they allege two different units of prosecution, i.e., two different victims: Officer Velasquez and Officer Boyd, respectively. Therefore, these offenses are not factually the same for purposes of double jeopardy. *See id.* at 168. Because the offenses are not factually the same, they do not constitute the "same offense," and Nealy's right against double jeopardy was not violated when the State prosecuted her harassment by a person in

12

a correctional facility after she had been prosecuted for committing the Class C misdemeanor offense of assault against Officer Velasquez. *See id.* at 168–69.

We overrule Nealy's fourth issue.

## Sufficiency of the Evidence

In her fifth issue, Nealy argues that there is insufficient evidence supporting her conviction for harassment by a person in a correctional facility pursuant to Penal Code section 22.11(a)(1) because there is no evidence that she intended to spit on Officer Boyd.

## A.      Standard of Review and Applicable Law

When reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals determines whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326. On appeal, we may not re-evaluate the weight and credibility of the

13

record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to make reasonable inferences from circumstantial evidence presented at trial. *Id.*

Proof of a culpable mental state generally relies on circumstantial evidence surrounding the offense. *See Gahagan v. State*, 242 S.W.3d 80, 86 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd) (citing *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978)). A jury may infer intent from facts that tend to prove its existence, such as the defendant's acts, words, and conduct. *Dillon*, 574 S.W.2d at 94.

Section 22.11(a)(1) provides:

> (a) A person commits an offense if, with the intent to assault, harass, or alarm, the person:
>
> (1) while imprisoned or confined in a correctional or detention facility, causes another person to contact the blood, seminal fluid, vaginal fluid, saliva, urine, or feces of the actor, any other person, or an animal.

TEX. PENAL CODE § 22.11(a)(1). Based on the plain language of the statute, the State was not required to prove that Nealy intended to spit on Officer Boyd, as Nealy argues; rather, the State was only required to prove that Nealy intended "to assault,

14

harass, or alarm" Officer Boyd when causing him to come into contact with something on the list of substances. *See id.*

**B.    Analysis**

Here, the record reflects that Nealy was combative with all the officers she interacted with at the jail, including Officer Boyd. She repeatedly refused to comply with the officers' requests which necessitated her being taken to her cell by force on two occasions. She tried to force her way out of her cell on another occasion after falsely claiming that she wanted to kill herself. She yelled obscenities at the officers throughout the evening, kicked and swung her arms at them on multiple occasions, and repeatedly spat on her cell window. Nealy also tried to provoke additional confrontations with the officers after they tried to disengage, such as when she shoved Officer Velasquez from behind as he walked out of her cell and then repeatedly spat on the window and yelled at Officer Velasquez who was standing outside her door that she wanted to fight him.

When Sergeant Boyd and the officers attempted to return Nealy to her cell after the deputy refused to transport her to the county jail, Sergeant Boyd grabbed Nealy's chin because he thought she was going to spit. Once Nealy had been returned to her cell and the incident appeared to be over, Nealy grabbed the jailer's pants leg as she tried to leave the cell. As a result, Officer Boyd returned to Nealy's cell to free the jailer and struggled with Nealy as he tried to restrain her. Officer Boyd

testified that Nealy spat directly in his face during this altercation and he did not believe that she had done so by accident.

Although Nealy repeatedly denied spitting on Officer Boyd and the video did not clearly show her spit in the officer's face, the jury, as factfinder, was entitled to disbelieve Nealy and believe Officer Boyd's testimony that Nealy spat directly in his face when they struggled. *See Chambers*, 805 S.W.2d at 461; *see also Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986) ("The jury may believe some witnesses and refuse to believe others[.]"). The jury could also reasonably infer from Nealy's combative and unruly conduct that evening that Nealy intended "to assault, harass, or alarm" Officer Boyd by spitting in his face. *See generally Ferguson v. State*, No. 01-03-01313-CR, 2005 WL 913140, at \*6 (Tex. App.—Houston [1st Dist.] Apr. 21, 2005, no pet.) (mem. op., not designated for publication) (holding there was sufficient evidence supporting defendant's conviction under former version of Penal Code 22.11 based in part on circumstantial evidence of intent). After viewing the evidence in the light most favorable to the verdict, we conclude that the jury was rationally justified in finding that Nealy caused her saliva to contact Officer Boyd and that she did so with the intent "to assault, harass, or alarm" Officer Boyd beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319.

We overrule Nealy's fifth issue.

**Cruel and Unusual Punishment**

In her first issue, Nealy argues that her sentence is grossly disproportionate to the offense committed and, therefore, it violates the United States Constitution's and the Texas Constitution's prohibitions against cruel and unusual punishment. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13.

Specifically, Nealy argues that her 3.75-year sentence in this case is grossly disproportionate to the offense she was convicted of committing, i.e., spitting on Officer Boyd, because she could have been charged with a Class C misdemeanor, which is only punishable by a maximum fine of no more than $500, as opposed to the third-degree felony. Nealy contends that it was irrational for the State to have charged her with a Class C misdemeanor for spitting on Officer Velasquez and a third-degree felony for spitting on Officer Boyd because both offenses "arose from the same incident, and both alleged the same spit." She also complains that the enhancement paragraph in her felony case prevented her from being eligible for probation and increased her punishment range to two to twenty years and a fine of up to $10,000.

## A.    Preservation

The Eighth Amendment prohibits cruel and unusual punishment, including "extreme sentences that are 'grossly disproportionate' to the crime" committed. *Graham v. Florida*, 560 U.S. 48, 59–60 (2010) (citation omitted). The right to be

17

free from cruel and unusual punishment is waivable, and thus, claims of a disproportionate sentence must be preserved for appellate review. TEX. R. APP. P. 33.1(a); *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection or motion, stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a)(1). The record does not demonstrate that Nealy asserted her grossly disproportionate sentence claim to the trial court when her sentence was imposed in open court, in a post-trial motion, or at any other time. Therefore, we hold that error was not preserved. TEX. R. APP. P. 33.1(a); *Noland*, 264 S.W.3d at 151.

Even if Nealy had preserved her complaint for our review, she would not prevail on the merits.

## B.    Applicable Law

The United States Constitution's ban on cruel and unusual punishment "requires that punishment be graduated and proportioned to the offense." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (citing U.S. Const. amend. VIII). However, this principle "does not require strict proportionality between the crime and the sentence." *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Rather, only those extreme sentences considered grossly disproportionate to the crime are forbidden. *Id.* (citing *Ewing v. California*,

18

538 U.S. 11, 23 (2003) (plurality opinion)). A finding that a sentence is grossly disproportionate has only been made in exceedingly rare and extreme cases. *Id.* at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). Ordinarily, "a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Randall v. State*, 529 S.W.3d 566, 568 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Simpson*, 488 S.W.3d at 323 (stating that "punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual").

In determining whether a sentence for a term of years is grossly disproportionate to a particular crime, we consider "the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham*, 560 U.S. at 60). Only in those rare cases in which our initial comparison gives rise to an inference of gross disproportionality do we then "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.*

## C. Analysis

Nealy was convicted of the third-degree felony offense of harassment by a person in a correctional facility, which is punishable by imprisonment for any term between two and ten years. *See* TEX. PENAL CODE § 12.34(a). Because the jury found that she had been convicted of a prior felony offense, Nealy's punishment was enhanced to that of a second-degree felony, which is punishable by imprisonment for any term between two and twenty years. *See id.* §§ 12.33(a), 12.42(a).

The jury assessed Nealy's punishment at 3.75 years' imprisonment, which is at the low end of the punishment range for both second and third-degree felonies. *See generally Simpson*, 488 S.W.3d at 323 (stating that "punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual"). With respect to the harm or threat of harm posed to the victim, Officer Boyd testified that he could have been exposed to an infectious disease when Nealy spit in his eye. Although Officer Boyd was not physically harmed by the incident and did not seek medical treatment, the record reflects that Nealy's conduct, i.e., spitting in Officer Boyd's face, nevertheless posed some risk of harm to the officer. *See generally Simpson*, 488 S.W.3d at 323 (stating courts consider "the severity of the sentence in light of the harm caused or threatened to the victim"). Nealy's criminal history, including her convictions for assaulting Officer Velasquez and public intoxication, and her charge of resisting arrest, also

20

indicate that her sentence is not grossly disproportionate to the crime she committed. *See generally Simpson*, 488 S.W.3d at 323 (stating courts consider offender's prior adjudicated and unadjudicated offenses when determining whether sentence is grossly disproportionate). In light of these factors, combined with the public policy of encouraging peaceful compliance with officers in the performance of their duty, we conclude that this is not one of the "rare cases" that gives rise to an inference of gross disproportionality. *See id.* Because our initial comparison does not give rise to an inference of gross disproportionality, we do not need to compare Nealy's sentence "with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* Accordingly, we hold that Nealy's sentence does not violate the United States Constitution's and the Texas Constitution's prohibitions against cruel and unusual punishment. *See id.*

We overrule Nealy's first issue.

### Ineffective Assistance of Counsel

In her third issue, Nealy argues that she received ineffective assistance of counsel because her counsel failed to: (1) challenge the constitutionality of Penal Code section 22.11, (2) seek dismissal of the charge against her based upon a double jeopardy claim, (3) request that a double jeopardy instruction be included in the jury charge, (4) offer evidence of Nealy's conviction for the misdemeanor assault stemming from the same altercation and argue the fundamental unfairness of the

differentiation of the two cases, (5) request a jury instruction that the State was required to prove that Nealy intended to cause saliva to contact Officer Boyd and intended to assault, harass, or alarm Officer Boyd, and (6) argue that there was a violation of the Eighth Amendment to the United States Constitution of cruel and unusual punishment and did not argue that the punishment was disproportionate to the offense, or request that there be an instruction in the jury charge. According to Nealy, her counsel's performance is deficient as a matter of law because there is no reasonable trial strategy which could justify counsel's conduct. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

## A. Standard of Review

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* two-step analysis, a defendant must demonstrate that (1) her counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88, 694; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make the required showing of either deficient

performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 689. To overcome this presumption, claims of ineffective assistance of counsel must be firmly founded in the record and affirmatively demonstrate the alleged ineffectiveness. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). However, a reviewing court will rarely be in a position to fairly evaluate the merits of an ineffective assistance claim on direct appeal because the trial record is usually undeveloped and inadequate to reflect the motives behind trial counsel's actions. *See id.* In fact, trial counsel should have the opportunity to explain his or her actions before being condemned as ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Therefore, when the record is silent as to trial counsel's strategy, we assume that counsel had a sound strategy, unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

23

**B.    Analysis**

Nealy argues that her counsel's conduct was deficient because he "failed to challenge the constitutionality" of section 22.11, thereby failing to preserve this issue for appellate review. Nealy does not cite to an appellate opinion in which a court has sustained the constitutional challenge she raises on appeal with respect to section 22.11, nor have we found any such opinions. Thus, her constitutional challenge raises an unsettled legal question. *See State v. Bennett*, 415 S.W.3d 867, 869 (Tex. Crim. App. 2013); *Enard v. State*, 513 S.W.3d 206, 216 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The failure to preserve error as to unsettled legal questions does not constitute ineffective assistance of counsel. *See Bennett*, 415 S.W.3d at 868–69; *Enard*, 513 S.W.3d at 216; *see also Perez v. State*, No. 07-12-00432-CR, 2013 WL 6908955, at *3 (Tex. App.—Amarillo Dec. 18, 2013, no pet.) (mem. op., not designated for publication) (relying on *Bennett* and holding trial counsel did not render ineffective assistance by failing to object to constitutionality of statute because it was unsettled legal issue).

Nealy further contends that her counsel's conduct was deficient because he failed to seek dismissal of the charge against her based on double jeopardy and failed to request that a double jeopardy instruction be included in the jury charge. As previously discussed, Nealy cannot demonstrate that the trial court would have erred by refusing to quash the indictment based on double jeopardy because the two

24

offenses are not factually the same and, therefore, Nealy was not being prosecuted for the same offense twice. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) (holding trial counsel is not ineffective for failing to make frivolous arguments or undertake unreasonable courses of action, such as requesting jury instruction that defendant is not entitled to receive); *see also Castillo*, 469 S.W.3d at 172 (stating assaults on different victims represent factually separate offenses). Although she asserts that her counsel should have requested a jury instruction on double jeopardy, she has not identified a factual dispute relating to her double jeopardy claim that needed to be resolved by the jury. Therefore, Nealy has not established by a preponderance of the evidence that trial counsel's representation fell below the objective standard of reasonableness by not requesting an instruction. *See Strickland*, 466 U.S. at 689. Furthermore, given the undisputed fact that the misdemeanor and felony charges allege two different victims, i.e., Officer Velasquez and Officer Boyd, Neely has not shown that there is a reasonable probability that, but for counsel's omission, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *see also Chandler*, 182 S.W.3d at 356.

Nealy also argues that her counsel was ineffective because he "failed to offer evidence of Nealy's conviction for the misdemeanor assault stemming from the same altercation and argue that fundamental unfairness of the differentiation of the two cases." Trial counsel's decision whether to offer evidence of Nealy's

misdemeanor conviction for spitting on Officer Velasquez falls squarely within the parameters of trial strategy. *See generally Martin v. State*, 265 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("This court has held that eliciting testimony from the accused as to his own prior convictions can be a matter of sound trial strategy. . . ."). Because counsel has not been given an opportunity to defend himself or explain his decision not to offer this evidence, we must assume that counsel had a sound strategy, unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. It is apparent from the record that one of Nealy's defensive strategies was that she did not spit on Officer Boyd and there was no evidence proving otherwise because the videos only showed her spitting on the window. Nealy not only denied spitting on Officer Boyd, however, she also testified that she did not spit on any other person. Evidence that Nealy had previously pleaded "no contest" to spitting on Officer Velasquez during the same incident would arguably have undermined her defense and we cannot say that trial counsel's decision not to offer this evidence was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392**.**

Nealy argues that her counsel's conduct was deficient because he failed to request a jury instruction that the State was required to prove that Nealy intended to cause saliva to contact Officer Boyd and intended to assault, harass, or alarm Officer

26

Boyd. "To demonstrate deficient performance based on the failure to request a jury instruction, an appellant must show that he was entitled to the instruction." *Washington v. State*, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999)). As previous discussed, the State was not required to prove that Nealy intended to spit on Officer Boyd; the State was only required to prove that Nealy intended "to assault, harass, or alarm" Officer Boyd. *See* TEX. PENAL CODE § 22.11(a)(1). Saliva was the means to that end. Because Nealy was not entitled to an instruction that the State was required to prove that Nealy intended to cause saliva to contact Officer Boyd, trial counsel's performance was not deficient based on his failure to request such an instruction. *See Washington*, 417 S.W.3d at 726.

Nealy also argues that her counsel was deficient because he failed to argue that her 3.75-year sentence violates the United States Constitution's and the Texas Constitution's prohibitions against cruel and unusual punishment, argue that the punishment was disproportionate to the offense, or request an instruction in the jury charge. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13. As previously discussed, the trial court would not have erred by overruling an objection that her sentence constituted cruel and unusual punishment. Therefore, Nealy has not established by a preponderance of the evidence that trial counsel's representation fell below the objective standard of reasonableness by not objecting to Nealy's

punishment on this basis or otherwise presenting this issue to the jury. *See Jagaroo v. State*, 180 S.W.3d 793, 801 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (explaining that defendant must show that trial court would have erred in overruling counsel's objection to punishment as cruel and unusual before court could conclude counsel was ineffective for failure to make such objection); *see also Chandler*, 182 S.W.3d at 356.

We overrule Nealy's third issue.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

28